THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LESTER MASON, Defendant-Appellant.

Third District   No. 77-102

Opinion filed July 11, 1978.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by the defendant Lester Mason from the circuit court of Peoria County which after trial by jury found him guilty of the offense of robbery and sentenced him to a term of not less than 5 nor more than 15 years in the penitentiary.

The scenario of events which resulted in this appeal commenced at approximately 2:30 a.m. on July 14, 1976. It was the testimony of Patricia Agee that at this time she was engaged as a desk clerk at the Imperial 400 motel in the city of Peoria, when a man entered the motel, walked up to the desk and placed thereon an obscene threatening note. This witness described the man as being black, 5'7" in height, having a beard and mustache, a two-inch Afro hair style, wearing wire-rimmed sunglasses and being dressed in blue jeans and a pullover top with long sleeves. The testimony of the witness Agee was that as the result of being frightened by the threatening note she placed the motel's cash drawer on the counter and that the defendant took the money. The defendant after demanding Agee's purse started to leave the motel but returned, retrieved the threatening note and then made his exit. It was Agee's testimony that she next pushed a hidden alarm button after which she looked out a motel window and saw the defendant get into an orange Cadillac with a white

top. On cross-examination the witness Agee admitted that she had assured the police that she would be able to identify the robber but that six days later she was unable to identify the defendant in a police lineup and that she did not attempt to make an in-court identification during the trial.

Lester Baker testified that he had known the defendant for approximately 18 months and on the night of the robbery he had driven him to the Imperial 400 motel since the defendant had stated that he needed to see a girl friend and obtain some money from her. It was this witness's testimony that the defendant gave him $10 for gasoline and his description of the witness on the night of the alleged robbery coincided with that of the witness Agee except that he did not see him wearing glasses but knew that the defendant had glasses with him. The witness Baker testified that he waited in the car while the defendant was in the motel and after a wait of three to five minutes the defendant returned to the Cadillac (colored burnt orange with a white top), entered the same but left when it would not start, and that the defendant then obtained a ride with a man driving a pickup truck. On cross-examination the witness Baker admitted that when the police arrived at the motel shortly after the robbery he lied to them by denying that he had seen anyone walking in the area or coming out of the motel. His testimony was that he lied because he was scared. He further established by his testimony that he subsequently told the truth and that several days after the robbery he received a telephone call from the defendant and that he was asked to tell the police that he had given a man named Gene Lewis a ride on the night of the robbery.

The final State witness who testified concerning the identification of the defendant was Daniel Pedigo, who was staying at the motel since he was doing some work in the Peoria area. Pedigo testified that he awoke at approximately 2:30 a.m. on the date in question and shortly thereafter left his room, at which time he saw a black male enter the motel office. Pedigo testified that he then "committed him to memory." As Pedigo was walking to his pickup truck he saw the same black male leave the motel office with a piece of paper in his hand and enter the passenger side of the Cadillac parked in the motel parking area. It was Pedigo's further testimony that the black male subject left the Cadillac and approached him with the request that he be taken to a service station. Pedigo's testimony was that he consented to the subject's request and gave him a ride to some location which he could not later pinpoint with certainty; however, during this trip the witness for a period of time was under the impression that the black male who he was transporting might have some weapon concealed in his shirt. The witness Pedigo made an in-court identification of the defendant as being the same individual who he saw at the motel and who he transported from the motel.

We will set forth a further recitation of the evidence adduced at the defendant's trial as it becomes pertinent to the issues raised in this appeal.

The defendant first contends that he was not proved guilty beyond a reasonable doubt. In support of this contention he stresses several facts, *i.e.*, that the victim witness Agee was never able to identify the defendant as the perpetrator of the robbery, that the witness Baker admitted that in his first contact with the police he lied and that the witness Pedigo had inaccurately described the defendant as being five feet ten inches tall when in fact he was three inches shorter, and that Pedigo knew that Baker would already have identified the defendant as the man he had driven to the motel and was thereby in some way prejudiced or induced to also make an in-court identification.

■■  It is true that the victim Agee was unable to identify the defendant in a police lineup as the one committing the robbery and she further made no attempt to identify him during the trial. We note, however, that the victim Agee described the robber as to physical characteristics and attire and said description in a very substantial way coincided with testimony describing the defendant given by the witnesses Baker and Pedigo. It is also clear from the record that Baker did indeed in the first instance lie to the police who were called to the scene of the crime; however, within a very short period of time he admitted this falsehood. It is not unreasonable to believe Baker's testimony to the effect that initially he was scared, didn't know what had happened in the motel and didn't want to get involved. As to Pedigo's misdescription as to the defendant's height, we do not deem such a misdescription to be of such import as to destroy the credibility of the witness. Precise accuracy in describing facial characteristics, hair, height and weight, is unnecessary where in-court identification is positive since identification is not usually made by distinguishing separate features but by total impression made upon witness. (*People v. Smith* (1977), 52 Ill. App. 3d 583, 10 Ill. Dec. 303, 367 N.E.2d 756.) We further do not deem it to be of any relevance that Pedigo knew that Baker had already identified the defendant for there is nothing in the record to indicate that these witnesses had in any way collaborated in regard to their testimony. In fact the record sets forth a specific denial to that effect.

■■■  This court has recognized the well-established rule that the jury as finders of fact in a criminal litigation is entitled to believe or disbelieve such evidence as it wishes, so long as the evidence, as a matter of law, raises reasonable inference of guilt. (*People v. Porter* (1973), 13 Ill. App. 3d 893, 300 N.E.2d 814.) Where a trial court had opportunity to view and hear testimony first hand, a reviewing court should not substitute its judgment as to credibility and weight to be given such testimony for that of the trial court and will set aside verdict only if proof is so unsatisfactory

as to justify a reasonable doubt as to defendant's guilt. (*People v. Barlow* (1976), 39 Ill. App. 3d 544, 350 N.E.2d 554.) In the instant case we do not find the testimony of the witnesses for the State to be so as to create a reasonable doubt as to defendant's guilt and therefore we do not agree with the contention of the defendant that he was not proved guilty beyond a reasonable doubt.

The defendant next assigns as error the trial court's denial of his motion in limine which concerned his prior criminal convictions.

At the close of the State's evidence the defendant moved to prohibit the introduction of evidence of any of his prior criminal convictions. Counsel for defendant informed the trial court that this motion in limine was predicated on two grounds, first that with the exception of defendant's "rap sheets" the State had not provided the defense with any material (primarily certified copies of prior convictions) concerning the defendant's previous convictions, and consequently the State had violated the rules pertaining to discovery. Secondly, counsel for defendant urged that the prior convictions were similar to the one with which the defendant was at that time defending himself against and that further the dates of the previous convictions were such that they should be barred.

The trial court granted a brief recess so that the defendant could examine the certified copies of the documents relating to his prior convictions, and then denied the motion in limine.

We note from the record that the certified copies of the defendant's prior convictions disclosed that both of them were for the offense of armed robbery and that the convictions occurred on June 10, 1970, and June 25, 1968. The trial court, relying upon the criteria set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695 ruled that in the proper exercise of its discretion the defendant could be impeached by his prior convictions if he elected to take the stand and testify in his own behalf. We quarrel not with this determination of the trial court, for this court stated as follows in the case of *People v. Spicer* (1976), 44 Ill. App. 3d 200, 358 N.E.2d 104:

> "The decision as to whether a previous conviction of a defendant may be disclosed for impeachment purposes is a decision to be weighed and determined by the trial court based upon the circumstances involved, and by the nature of the problem the trial court must be given considerable latitude in making the decision." *People v. Spicer* (1976), 44 Ill. App. 3d 200, 202-03, 358 N.E.2d 104, 105.

■■ We cannot conclude in the instant case that the trial court abused its discretion in permitting the State to impeach the testimony of the defendant by disclosure of prior convictions if he elected to take the stand.

We further do not agree with the defendant's assertion that the motion in limine should have been granted because he was not furnished with the certified copies of his previous convictions. We fail to see where the defendant was harmed or prejudiced as the result of not being supplied with the copies. He had previously been supplied with a copy of his own "rap sheet." The defendant knew of his two prior convictions and he was further aware of the fact that the State was possessed of knowledge of them.

■■ Where the State has failed to comply with discovery requests prior to trial it is nevertheless within the sound discretion of the trial court to admit testimony of unlisted witnesses or unfurnished physical evidence and the admission of such evidence does not constitute error absent a showing by accused of resulting prejudice and surprise. *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126.

■■ In the instant case the defendant admitted that he experienced no surprise concerning his record of prior convictions and we are at a loss to determine how he was prejudiced or denied a fair trial by the trial court's denial of a motion in limine to prohibit the use of his prior convictions for impeachment purposes.

Lastly, the defendant argues that error was committed when the trial court refused his tendered instruction IPI Criminal No. 3.17 concerning accomplice testimony.

The defendant tendered and the trial court refused the following instruction:

> "An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (IPI Criminal No. 3.17 (1968).)

It is the contention of the defendant that the foregoing instruction should have been given to the jury since the jury could have well determined that the witness Baker was an accomplice to the individual who perpetrated the robbery of the Imperial 400 motel. In support of this contention the defendant relies on the law as set forth in the case of *People v. Johnson* (1925), 317 Ill. 430, 148 N.E. 255. The defendant's reliance on the case of *Johnson* is in our opinion misplaced since in that case the defendant was convicted by the testimony of one who was in fact an accomplice. In the instant case the determination as to whether the instruction, to-wit, IPI Criminal No. 3.17, hinges on whether or not the witness Baker was an accomplice.

■■ The case of *People v. Hrdlicka* (1931), 344 Ill. 211, 176 N.E. 308, defines an accomplice as follows:

"An accomplice is defined as one who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime. [Citations.] The generally accepted test as to whether a witness is an accomplice is whether he himself could have been indicted for the offense, either as principal or accessory. If he could not then he is not an accomplice. The term 'accomplice' cannot be used in a loose or popular sense so as to embrace one who has guilty knowledge or is morally delinquent or who was even an admitted participant in a related but distinct offense. To constitute one an accomplice he must take some part, perform some act or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime." *People v. Hrdlicka* (1931), 344 Ill. 211, 221-22, 176 N.E. 308, 313.

■■ Applying the foregoing rule to the actions of the witness Baker we cannot conclude that he was an accomplice. The evidence establishes that he drove the defendant to the motel but there is no evidence to support a finding that he had knowledge that when they arrived at the motel the defendant intended to commit the crime of robbery. We do not gloss over the testimony that the witness Baker in the first instance lied to the police who arrived at the scene of the crime and that his testimony as to this incident was that he lied because he was scared and didn't know what had occurred in the motel. As we interpret the witness's testimony, he didn't want to get involved. We do not condone his falsehood but we find its explanation a reasonable one. The evidence adduced at the defendant's trial was insufficient to classify him as an accomplice. There was no evidence of a common intent, no evidence that Baker had knowledge of a crime to be committed, no evidence that he united his efforts with that of the defendant to commit the crime and it is clear that he (Baker) could not himself have been indicted for the offense of robbery of the motel. The trial court correctly refused the tendered instruction IPI No. 3.17 for there was not sufficient evidence to place the witness Baker in the category of an accomplice.

For the reasons set forth the judgment of conviction of the circuit court of Peoria County and the sentence imposed thereon is affirmed.

Affirmed.

BARRY, P. J., and ALLOY, J., concur.