THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CURTIS MOSLEY *et al.*, Defendants-Appellants.

First District (5th Division)   No. 78-180

Opinion filed May 4, 1979.

James J. Doherty, Public Defender, of Chicago (Lee McMahon and Ira Churgin, Assistant Public Defenders, of counsel), for appellants.

810

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendants were each convicted of robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—1) and sentenced to terms of three to nine years. On appeal, they contend that the trial court committed prejudicial error when it restricted their cross-examination of the occurrence witness and admitted hearsay testimony. Additionally, defendant Chalmers contends that the court erred when it refused to grant a continuance to allow him to file a petition for treatment as a drug addict.

The following pertinent evidence was adduced at trial.

*For the State*

*Michael J. Dolan, Chicago Police Officer*

On May 4, 1977, at approximately 7:30 p.m., he and his partner, Patrolman Soristo, both wearing plain clothes, were driving west on Montrose in an unmarked car. As they approached the intersection of Kenmore and Montrose, he observed, approximately 20 feet west of the intersection, an "older" white male on his hands and knees, attempting to get up. Defendants, who were the people nearest to the man, were walking away from him, going east on Montrose and then turning south on Kenmore. After he pulled the police car up to the curb, he and his partner approached the man, who was now on his feet. The man asked them if they were police officers, and when they said that they were, he pointed to Kenmore, where defendants were walking, and said, "Those three men just robbed me." He and his partner drew their weapons and ran down the street after defendants who were 65-75 feet away. Defendants looked over their shoulders, and then walked from the sidewalk onto a grass parkway. One of the defendants, who subsequently identified himself as Terry Patterson, dropped a wallet to the ground. They ordered defendants to halt, caught up to them, and placed them under arrest. He picked up the wallet which defendant Patterson had dropped, and saw that it contained $3 and the identification of Michael Sylvester, the victim. They searched the defendants and recovered a "claw type" hammer from defendant Chalmers. They also searched the surrounding area. They found Sylvester's keys, but did not find his glasses or any additional money. He noticed that there was a sewer hole right where they took defendants into custody, and a small utility hole nearby in the street. The parties were all transported to the 23rd district police station. At the station, Sylvester showed him a large lump on the back of his head.

On cross-examination, he conceded that the case and arrest reports do not state that when Michael Sylvester was first noticed he was on the

ground, but do state that Sylvester flagged the police down. He also conceded that the reports do not indicate that he saw a lump on the back of Sylvester's head, and refer to the $3 as being "seized from Terry Patterson." He acknowledged that one of the reports said that when interviewed, Sylvester said that he was about to enter a building when three male Negroes came up from behind and struck him on the head with a hammer.

*Michael Sylvester, complaining witness*

On May 4, 1977, at approximately 7:30 p.m. he was walking westward toward his home on 1050 West Montrose. As he crossed Kenmore, defendant Mosley grabbed him by the neck, while defendants Patterson and Chalmers stood at his sides and went through his pockets. They took approximately $44 that he had in his wallet plus $3 in some change that he had in his pocket. They also took his keys and his glasses, which he found by the curb on his way to work the following morning. One of them hit him on the head with something, and he got a lump on his head. After they took his things, Mosley knocked him to the ground, and the three of them walked away. The police then arrived, and he told them that defendants had robbed him. The police arrested the defendants, and they all went to the police station. There, the police showed him a hammer and his wallet which was taken from him.

On cross-examination, he denied being charged with deceptive practices in November of 1973. He did not remember testifying on May 5, 1977, a day after the occurrence, that he had $6 or $7 in his pocket.

It was stipulated that if Ann Hieber were called, she would testify that she is an official court reporter, and, at a hearing held on this cause on May 5, 1977, she heard Michael Sylvester testify that the robbers took $6 or $7 which he had in his pocket.

OPINION

Defendants first contend that they did not receive a fair trial because the trial court erroneously restricted their cross-examination of the victim, Michael Sylvester. The error allegedly occurred when the trial court sustained the State's objections to defense counsel's questions, on cross-examination of Sylvester, as to whether he recalled being charged with deceptive practices, and whether there was a warrant out for his arrest for a bond forfeiture. Defendants argue that by sustaining the objections, the trial court prevented them from showing "the bias or undue pressure" out of which the witness testified, and thereby denied them a fair trial.

■■ We reject this argument. The scope of cross-examination is a matter within the trial court's discretion, and a court of review will not find reversible error because of unduly restricted cross-examination unless there was a clear abuse of discretion resulting in manifest prejudice to defendants. (*People v. Hubbard* (1973), 55 Ill. 2d 142, 302 N.E.2d 609;

*People v. Yancey* (1978), 57 Ill. App. 3d 256, 372 N.E.2d 1069.) When a witness' character is attacked for purposes of impeachment, only convictions may be proved, and proof of arrests, indictments, charges, or the actual commission of a crime are not admissible. (*People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835.) However, the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to indicate that his testimony might be influenced by interest, bias, or a motive to testify falsely. *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708.

■■ At the trial below, when an objection was made to defense counsel's question as to whether Sylvester recalled being charged with deceptive practices, the court ruled that "the objection will be sustained to the form of the question." The court also sustained an objection regarding Sylvester's being wanted on a bond forfeiture warrant. Subsequently, however, defense counsel was allowed to continue his cross-examination, and upon questioning, Sylvester denied ever being charged with deceptive practices. The court later reviewed Sylvester's "rap sheet," which was tendered by defense counsel. The court noted, for the record, that Sylvester had been charged with deceptive practices in November 1973, and that a bond forfeiture and warrant had been issued. In *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448, we held that although an initial restriction of defense counsel's cross-examination of the witnesses' ability to observe was improper, the restriction was not prejudicial error when the record showed that defense counsel did examine the witnesses on that point. Similarly, in the instant case, Sylvester was successfully impeached concerning the deceptive practices charge, and the court, sitting as trier of fact, was fully able to consider any bias or interest Sylvester might have had as a result of the bond forfeiture warrant. The sufficiency, weight and credibility of identification testimony, as well as of all other evidence adduced, is clearly a matter for determination by the trier of fact, and that determination will not be reversed unless the evidence is so unsatisfactory, unreasonable or improbable as to create a reasonable doubt of defendant's guilt. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288; *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904.) Although the court stated in delivering its verdict, that it was "mindful of some misstatements made by Mr. Sylvester," it nevertheless determined that his testimony, as corroborated, was sufficient to support a finding that defendants were guilty beyond a reasonable doubt. This finding is amply supported by the evidence set out above, and should not be disturbed. Having reviewed the entire record, we conclude that defendants were not prejudiced by the initial restriction of their cross-examination.

■■ ■ Defendants next contend that the testimony of Officer Dolan that Michael Sylvester pointed to defendants and said "those three men just

robbed me" was hearsay and erroneously admitted. Sylvester, the declarant referred to by Officer Dolan, was available to testify, did in fact testify as to the same matter, and was available for cross-examination. We stated in *People v. Townsend* (1977), 47 Ill. App. 3d 789, 791, 365 N.E.2d 110, 112, that:

> "The fundamental purpose of the hearsay rule is to test the value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered. [Citation.] If the person who made the out-of-court identification is present, testifies to his prior identification, and is subject to cross-examination, the purpose of the hearsay rule is satisfied."

In light of Sylvester's presence and testimony, the purpose of the hearsay rule was satisfied in this case. Additionally, any error involved in the admission of hearsay testimony is harmless when the testimony is merely cumulative or is supported by a positive identification and other corroborative circumstances. (*People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.) Since Sylvester testified at trial that he told the police that defendants had just robbed him, Officer Dolan's testimony as to Sylvester's statement is clearly cumulative. Further, Sylvester's identification of defendants at trial was positive, and corroborated by the arrest of the defendants as they fled the scene, immediately after the crime, in possession of Sylvester's wallet, some money, and the hammer with which Sylvester was apparently struck on the head. In light of the above, the error alleged by defendants must be considered harmless.

Finally, defendant Chalmers contends that the trial court erred when it denied his request for a continuance so that he could file a petition electing treatment as a drug addict. This point was first raised at the hearing in aggravation and mitigation when, given a chance to be heard prior to sentencing, defendant Chalmers stated, "I would like to be recommended to some type of drug program." Defense counsel then asked for a continuance so that a proper petition for treatment of Chalmers as a drug addict could be filed. The court considered the presentence investigation report and the lateness of the motion, and denied defendant's request. Citing sections 8 and 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, pars. 120.8 and 120.9), Chalmers now contends that following his statement that he wished treatment as a drug addict, the court was compelled to continue the case, order an examination and report from the Department of Mental Health, and only then decide whether he should be treated as a drug addict.

■■■ We disagree with this argument. In *People v. Warren* (1977), 69 Ill. 2d 620, 373 N.E.2d 10, our supreme court held that a defendant in a criminal case who is eligible for and elects to receive treatment under the

Dangerous Drug Abuse Act cannot compel the trial court to order his examination by the Department of Mental Health, and consider the report of that examination prior to exercising its discretion in denying the petition for treatment. In reaching that conclusion, the court stated that the legislative purpose behind the statutes cited by defendant herein was:

> "[T]o establish a departmental treatment program to which certain drug addicts * * * could be admitted in those cases in which the trial court determined that such disposition would be in the best interests of the defendant and society and the Department consented. Once the court has made that tentative determination and the defendant has elected to proceed in that manner, the departmental examination is to be ordered for the purpose of securing its consent and recommendations. But where the court has determined, for reasons sufficient to remove that decision from the area of arbitrary action, that disposition under the Dangerous Drug Abuse Act is not desirable, a defendant has no right to compel his examination." (69 Ill. 2d 620, 629, 373 N.E.2d 10, 14; see also *People v. Young* (1977), 56 Ill. App. 3d 106, 371 N.E.2d 646.)

In the instant case, defendant Chalmers' presentence investigation report indicated that he last used heroin in 1974, some three years before the trial. This fact, plus the lateness of defendant's request for recommendation to a drug treatment program, support the court's determination that Chalmers would not be considered an addict and that the procedures proscribed by the Dangerous Drug Abuse Act would not be ordered. The decision to proceed with the examination and other steps provided for by the Dangerous Drug Abuse Act is clearly one to be made within the court's discretion. In light of the factors referred to above and defendant's prior criminal record, the court's discretion does not appear to have been arbitrarily exercised, and accordingly will not be reversed on appeal.

Based on all of the above, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.