THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY JACKSON, Defendant-Appellant.

First District (1st Division) No. 78-778

Opinion filed December 17, 1979.

Ralph Ruebner and Susan Solovy, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Marcella J. Meyer, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Larry Jackson, was found guilty by a jury of three counts of armed robbery and was sentenced to six to twenty years. Defendant appeals.

Clarence Lester, one of the complaining witnesses, testified that on September 18, 1976, at approximately 1 a.m., he was at a lounge located at 68th and Green Streets in Chicago. Johnnie Mae Drain, a woman acquainted with some people who knew him, asked him to come outside and look at her car, which had just been in an accident. Lester then went with Johnnie Mae and her cousin, Antine Drain, and looked at Johnnie Mae's car. Afterwards, he and the Drains walked back on 68th Street towards the lounge. Near Green Street, two men came up behind them and said, "don't turn around, this is a stickup." Lester testified that he and the Drains did turn around. He identified defendant and Jerry Wells as having been the assailants and further stated that Wells at that time appeared to be holding a gun.

Johnnie Mae Drain testified that one of the assailants had a gun. She further stated that although she had concentrated most of her attention on the gun, she was positive defendant was the other assailant. She testified that she knew defendant, because the year prior to the incident defendant had lived a block away from her and she had talked with him before and had seen him when she visited her girlfriend's house.

Lester testified that after he and the Drains were informed it was a "stickup," Jerry Wells told them to throw their money on the ground and also ordered Johnnie Mae to throw her purse down and Antine to remove

his jacket. They threw these items on the ground, Lester testified, and Johnnie Mae said, "Larry, you know me. * * * Why do you want to do this?" Lester asked Wells if he could pick up his car keys, which he had accidentally thrown on the ground with his change, and Wells told him he could. As he was reaching for the keys, he heard what sounded like a gunshot being fired. Lester was not hit by the shot, but Johnnie Mae testified that when Lester reached for the keys Wells was holding the gun "dead at" him and then fired it. She saw fire come from the gun and thought Lester had been shot.

Johnnie Mae Drain further testified that after the shot was fired, she ran back to the lounge and told someone there to call the police. Lester stated that he also ran a few steps, then turned around and saw defendant and Wells run a short distance south into an alley on Green Street and enter a corner apartment building facing 68th Street. He observed defendant and Wells running upstairs in a crouched position before they were out of view.

Several minutes after the gun was fired, the police arrived. Lester told them the offenders had run into a corner building at 68th and Green Streets, and Johnnie Mae Drain, Lester, Antine Drain and the police then entered the building and went up to the second floor. The police knocked on an apartment door and they were all admitted into the apartment. A number of people were inside having a party. Johnnie Mae Drain and Lester both testified that shortly afterwards they observed defendant hiding under a bed in a rear bedroom of the apartment. Lester stated that the rear bedroom was well lighted.

The police took defendant downstairs and outside. When they came outside, Lester testified, they were joined by another policeman who had apprehended Jerry Wells. Lester testified that he identified Wells to the policemen as the other offender and that Wells had money in his mouth. Johnnie Mae Drain stated that the police then left with Wells and defendant, and she, Antine and Lester followed them in her car to the police station. Lester and Johnnie Mae Drain further testified they did not see the latter's purse at any time after it was taken.

Officer Charles Bowers testified that at approximately 1 a.m. on September 18, 1976, he and his partner, Officer Larry Hargrove, arrived at 68th and Green Streets in response to a call that a man had been shot. There he saw Lester and Johnnie Mae and Antine Drain, who told him they had been held up by two black males, who had run into a building down the street. He, his partner, Lester and the Drains then entered the building. They went up to the second floor, where they heard noises coming from an apartment. They knocked on the apartment door and someone let them in and allowed them to search for the offenders. About 10 or 15 people were in the apartment. Lester and the Drains told him

they did not recognize any of them. He and his partner, with Lester and the Drains, then went through a hallway and entered a rear bedroom of the apartment. There they noticed defendant hiding under the bed and he ordered defendant to come out with his hands up.

When defendant crawled out from under the bed, Officer Bowers testified, Lester and the Drains said, "[T]hat's the man, that's the man." Officer Hargrove also testified that when defendant came out from under the bed Lester and the Drains "automatically pointed to [defendant] and stated he was the one." Officer Bowers further testified that he and Officer Hargrove did not search the apartment except for the rear bedroom and that they recovered some money from defendant, but did not recover a purse or jacket.

Larry Butler testified as a defense witness. He stated he was also known as Jerry Wells and that he had been convicted and was serving time in the penitentiary for participating in the crime with which defendant was charged. Butler further testified that on September 18, 1976, at about 1 a.m., he and Vincent Adams approached two men and a woman on the corner of 68th and Green Streets and told them it was a "stickup" and not to turn around. They turned around anyway and he told them to empty their pockets, which they did. One of the men, Butler stated, then asked if he could pick up his car keys and Butler told him he could. As the man bent down for the keys, he reached for Butler's leg as though he intended to trip him, so Butler fired a shot at him. Butler testified that Adams then took the woman's purse and he and Adams ran down 68th Street, through an alley to a vacant lot, where they divided the money in the purse. They left the purse there and walked up on a back porch behind an apartment building on 68th Street. About five or 10 minutes later, a policeman came down the alley. Adams ran down the stairs past the policeman, Butler testified. He himself ducked behind a garbage can, threw his gun on the roof of the porch and put the money in his mouth. The police officer then arrested him and brought him around to the front of the apartment building, where he saw defendant for the first time that evening. Butler testified that defendant had nothing to do with the planning of the robbery and was not anywhere in the area when the robbery occurred that he knew of.

Butler further testified that he had known Vincent Adams since 1975 and that at the time of defendant's trial Adams was 15 or 16 years old, five feet eight or nine inches tall, and weighed 145 pounds. Also, Butler stated that when he was arrested he told the arresting officer that he had committed the crime with Vincent Adams. At another point in his testimony, Butler stated he did not tell the arresting officer that Vincent Adams was the person with whom he had committed the crime.

Butler also testified that he knew defendant under the names of both

Larry Jackson and Larry Williams. He had known defendant since about 1971 or 1972; defendant lived upstairs in the same building Butler lived in. Butler further testified that he had been in contact with defendant since the crime. Defendant had written him a letter from county jail; after Butler received the letter, he had discussed his testimony in this case with defendant.

Defendant testified that on September 18, 1976, at approximately 1 a.m., he did not rob Johnnie Mae Drain or anyone else on 68th and Green Streets. Defendant asserted that at that time he was in his associate's second floor apartment at 843 West 68th Street, and had been there since about 9 p.m., listening to music, gambling and smoking marijuana. Defendant stated that about 30 other people were in the apartment and that he knew them from the neighborhood, but did not know their first names. Two of them, defendant testified, were Victor and Tina Campbell.

Defendant testified that when the police arrived that night at the apartment, the people inside started running around and some climbed out of the washroom and other rooms. Defendant never saw anyone exit from either door of the apartment, and the back door of the apartment was shut throughout that time. Defendant stated that he knew he and the other people were doing things at the party they should not have been doing, so he ran to the back bedroom of the apartment and "tried to hide in the bed [as though he] was sleeping." When the police came into the bedroom, defendant testified, he was partially on and partially off the mattress and there were pillows all around him, but he was not underneath the bed. Defendant then heard one of the policemen ask if defendant was "one of them" and he heard Johnnie Mae Drain answer, "yes, that is one of them" before she saw him.

Defendant further testified that he knew Johnnie Mae Drain and had seen her when he was visiting a friend, but did not know her by name and had never had a conversation with her. Defendant also testified that he had known Jerry Wells or Larry Butler for a few years. Wells' mother was renting an apartment from defendant's parents and Wells was living there. Defendant stated he did not see Wells on the day of the robbery until the police took defendant outside in front of the apartment building and brought Wells around from the back. Defendant also stated that he was 23 years old at the time of trial.

Defendant first contends that it was reversible error for the trial court at the State's request to give IPI Criminal No. 3.17 (Illinois Pattern Jury Instructions, Criminal, No. 3.17 (1968)) concerning Larry Butler's testimony. IPI Criminal No. 3.17 states:

> "An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. The testimony of

an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

Defendant maintains that IPI Criminal No. 3.17 is not a proper instruction when a witness testifies he participated in the crime with which defendant is charged, but exonerates the defendant. Butler testified that he and Vincent Adams, not defendant, robbed the complaining witnesses. According to IPI Criminal No. 3.17, an accomplice is someone who testifies he was "involved in the commission of a crime with the defendant." Therefore, defendant argues, Butler was not testifying as an accomplice according to the instruction. Thus, the instruction improperly discredited Butler's testimony and could only have confused the jury.

We believe it was error for the trial court here to give IPI Criminal No. 3.17, but that it was harmless error beyond a reasonable doubt. IPI Criminal No. 3.17 is based on recognition of the fact that the relationship between the State and an accomplice is such that the accomplice may be motivated to testify falsely against a defendant in the expectation or hope of lenient treatment in return from the State. (*People v. Brown* (1977), 55 Ill. App. 3d 724, 370 N.E.2d 814.) We agree with defendant that because IPI Criminal No. 3.17 describes an accomplice witness as "one who testifies that he was involved in the commission of a crime *with the defendant*" (emphasis supplied), this particular instruction is intended to be given only when a witness testifies on behalf of the State and implicates the defendant. (*People v. Brown* (1977), 55 Ill. App. 3d 724, 370 N.E.2d 814.) Consequently, IPI Criminal No. 3.17 is not a correct instruction when a witness testifies that he participated in the crime with which the defendant is charged, but exonerates the defendant. However, there is nothing inherently unfair about a trial court cautioning the jury concerning the value of such testimony, at least when some basis exists for believing the witness had a motive to fabricate testimony favorable to defendant. See *United States v. Nolte* (5th Cir. 1971), 440 F.2d 1124, *cert. denied* (1971), 404 U.S. 862, 30 L. Ed. 2d 106, 92 S. Ct. 49; *People v. Touhy* (1935), 361 Ill. 332, 197 N.E. 849; *People v. Brown* (1977), 55 Ill. App. 3d 724, 370 N.E.2d 814 (Jones, J., specially concurring).

Butler testified that he had been in contact with defendant since they had been arrested. Defendant had written Butler a letter from county jail. After Butler received the letter, he had talked about his testimony in this case with defendant. Also, Butler during his testimony equivocated concerning whether he had told the policeman who arrested him that Vincent Adams had participated in the crime with him. In addition, both Johnnie Mae Drain and Clarence Lester positively identified defendant as one of the robbers and defendant admittedly knew Johnnie Mae Drain prior to the incident. Moreover, defendant was 23 years old at the time of

trial and Vincent Adams, according to Butler, was only 15 or 16 years old then. This difference in age reduces the chance that Johnnie Mae Drain and Lester may have confused Adams with defendant.

It would have been better if the trial court had cautioned the jury concerning testimony of a witness who testifies he participated in the crime with which the defendant is charged, rather than of a witness "who testifies that he was involved in the commission of a crime with the defendant." However, the evidence clearly created a strong basis for the jury to believe that Larry Butler fabricated his testimony exonerating defendant. For that reason, even though the jury may have been cautioned with an incorrect instruction concerning Butler's testimony, the instruction was harmless error beyond a reasonable doubt. See *People v. Denning* (1978), 59 Ill. App. 3d 86, 375 N.E.2d 146; *People v. Brown* (1977), 55 Ill. App. 3d 724, 370 N.E.2d 814.

Defendant's second contention is that it was reversible error to allow Officers Bowers and Hargrove to testify that the three victims all identified defendant as one of the robbers when they saw defendant come out from under the bed. We disagree.

It is error to allow a witness to testify to another person's out-of-court identification. Such testimony, when offered to prove the truth of the matter asserted therein, is hearsay. However, it is not reversible error to allow such testimony if the person who allegedly made the identification also testifies that he made such an identification, or if the testimony is merely cumulative or is supported by a positive identification and other corroborative circumstances. *People v. Mosly* (1979), 71 Ill. App. 3d 808, 390 N.E.2d 364; *People v. Overton* (1976), 44 Ill. App. 3d 490, 358 N.E.2d 393.

Antine Drain did not testify, but Johnnie Mae Drain and Clarence Lester both made positive in-court identifications of defendant. Moreover, Johnnie Mae Drain stated that she knew defendant prior to the incident and defendant admitted that he had seen her on more than one occasion. Although she and Lester did not specifically testify that they identified defendant as one of the offenders at the time defendant was arrested, they did testify that they and Antine Drain saw defendant hiding under the bed, watched the police take defendant and Jerry Wells (Larry Butler) away, and followed the police to the station in her car. The clear import of this testimony is that at the time the defendant was arrested they believed he was one of the robbers. Further, defendant himself testified that when he was under the bed Johnnie Mae Drain stated to the police that he was one of the robbers.

The testimony of Officers Bowers and Hargrove concerning the complaining witnesses' out-of-court identifications of defendant clearly was cumulative and supported by positive in-court identifications of

defendant and other corroborative circumstances. The State obviously was not attempting to use the testimony of Bowers and Hargrove as a substitute for an in-court identification or to bolster a weak identification. The admission of this testimony was harmless beyond a reasonable doubt. *People v. Overton* (1976), 44 Ill. App. 3d 490, 358 N.E.2d 393.

Defendant's final contention is that the following statement by the prosecutor during closing argument requires reversal because it was an improper comment on defendant's failure to call certain witnesses:

> "The defendant testified that he was at a party with some friends. [Defendant] said that there were approximately thirty or so people in that apartment. He named several names. You haven't heard from any of them."

We disagree. Generally, "[i]t is improper for a prosecutor to comment on defendant's failure to call a witness where the comment suggests that the witness would have testified unfavorably to the defendant and the witness is as accessible to the State as he would be to the defendant." (*People v. Gamboa* (1975), 30 Ill. App. 3d 242, 250, 332 N.E.2d 543.) When alibi witnesses are injected into the case by defendant, however, they "are deemed unavailable to the prosecution and comment with regard to the failure of such witnesses to testify is proper." *People v. Mays* (1972), 3 Ill. App. 3d 512, 514, 277 N.E.2d 547.

Defendant testified that at the time of the robbery he was at a party with about 30 other people from the neighborhood and he named Victor and Tina Campbell as two of these people. The prosecutor's comment clearly was a proper reference to possible alibi witnesses specifically named by defendant. (*People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170.) In addition, the court gave IPI Criminal No. 1.03 (Illinois Pattern Jury Instructions, Criminal No. 1.03 (1968)) instructing the jury that closing arguments are not evidence and that any statements made in closing argument not based on the evidence should be disregarded. *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339, *appeal denied* (1979), 76 Ill. 2d ___ Defendant's conviction and sentence are affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.