THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS TESTA, Defendant-Appellant.

First District (1st Division) No. 82—1313

Opinion filed June 29, 1984

1040

Sam L. Amirante, of Park Ridge, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Jane E. Liechty, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Thomas Testa was convicted of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a)) and sentenced to 50 years in the Illinois Department of Corrections, to be served consecutively with a 15-year sentence for a prior felony conviction. Defendant appeals, raising the following issues for review: (1) whether the trial court erred in denying his motion to suppress evidence; (2) whether the denial of his motion to suppress photographic identification was error; (3) whether the court erred in denying his motion to exclude the dates of prior convictions; (4) whether the court erred in denying his request to cross-examine the victim as to her interest in a civil lawsuit; (5) whether he received a fair trial as a result of certain alleged prejudicial remarks made by the State in closing argument; (6) whether the court abused its discretion in sentencing him to a 50-year extended-term sentence to run consecutively with a prior 15-year sentence; and (7) whether his verdict should have been modified to a finding of guilty but mentally ill. For the reasons set forth below, we affirm.

The record reveals that on April 17, 1980, the victim was employed as a singer at a hotel in suburban Rosemont. On said date, at approximately 2 a.m., she left work and walked to her car at the far end of the hotel's parking lot. Upon approaching her car, the victim was grabbed from behind, spun around and held by the throat. Her attacker demanded she open her car door and, when she refused, began strangling her. After forcing her into the car, the attacker held her and began grabbing her hair. During the ensuing struggle, the attacker pulled out handfuls of the victim's hair. He then forced her to have sexual intercourse with him. Later, after telling the victim he loved her and asking for her forgiveness, he left the car.

Thereafter, the victim drove to the Rosemont police station. She gave the police a description of her attacker and told them she had scratched him under his left eye. The victim was then treated at a hospital and at that time shown a photographic lineup. The victim identified a photograph of defendant as her attacker, a warrant was issued for his arrest and, shortly thereafter, the police arrested defendant at his apartment and seized various items of clothing and hair from his bedroom which were later used as evidence at trial.

Prior to trial, defense counsel made motions to suppress identification and evidence. The physical lineup wherein defendant was present was suppressed by agreement, but the photographic identification was permitted to be used in evidence. Defendant's motion to suppress the articles of clothing taken from his bedroom was also denied.

At trial, the State called as a witness the victim, who testified to the facts previously stated. The State's other witnesses included arresting Officer Lee Mayer, who testified that defendant had a scratch above and below his left eye when he was arrested. Also testifying for the State was a forensic scientist who analyzed the physical evidence and stated that the blond hair fibers found on defendant's clothing were consistent with the victim's hair and could have originated from her. The only witness for the defense was defendant, who raised an alibi defense.

Based on the foregoing evidence, the jury returned a verdict of guilty. At sentencing, the State waived aggravation and the defense called in mitigation two witnesses who testified as to defendant's mental condition. Defendant was sentenced to serve 50 years, consecutively with a 15-year sentence for a prior felony conviction.

I

██ Defendant initially urges that the trial court improperly denied his motion to suppress evidence consisting of two plaid shirts and two pairs of blue jeans. He alleges the trial court erred in finding that the seizure of such evidence was proper under the plain view doctrine. We disagree.

At the hearing on the motion to suppress, Officers Lee Mayer and Joel Smith testified that when they arrived at defendant's residence to arrest him, he was wearing only his underwear. Following his arrest, defendant indicated he wanted to get dressed before going to the police station, and the officers escorted him to his bedroom to change. The officers further testified that as they entered defendant's bedroom they observed two pairs of blue jeans and two plaid shirts on

the floor, and noticed long blond hair fibers on one of the shirts. Officer Smith then took the plaid shirts and jeans and placed them in bags. Officer Mayer also stated that during an interview with the victim approximately two hours prior to the arrest, she stated that her attacker was wearing a plaid jacket or shirt and blue jeans. She also told them that he had pulled out large amounts of hair from her head. Officer Mayer described the victim's hair as blond and fairly long.

In Illinois, the seizure of evidence is proper under the plain view doctrine when the following conditions are satisfied: (1) the object seized is in plain view; (2) the officer views the object from a position where he has a right to be; and (3) the facts and circumstances known to the officer at the time he acts give rise to a reasonable belief that the items seized constitute evidence of criminal activity. *People v. Montgomery* (1980), 84 Ill. App. 3d 695, 698, 405 N.E.2d 1275; *People v. Holt* (1974), 18 Ill. App. 3d 10, 12, 309 N.E.2d 376.

In the present case, the State met all three requirements for a plain view seizure. First, arresting officers Mayer and Smith testified that the clothing in question was in plain view when they entered defendant's bedroom. We note that defendant testified he believed the clothing was in his bedroom closet, which was closed when the officers entered the bedroom; however, defendant contradicted himself at one point with regard to whether he had put away the pair of jeans he wore the previous night. The trial court found the officers' testimony to be credible. At a hearing on a motion to suppress, it is the function of the trial court to assess the credibility of witnesses (*People v. Brown* (1980), 81 Ill. App. 3d 271, 274, 401 N.E.2d 310), and the court's findings should not be disturbed unless manifestly erroneous (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 291, 438 N.E.2d 1282). Here, the trial court was able to observe the witness' demeanor, and there is no showing that its findings were manifestly erroneous.

The second requirement for a plain view seizure is also satisfied here because the officers viewed defendant's clothing from a position where they had a right to be. Officers Mayer and Smith testified that when they arrested defendant at the door to his residence he was wearing only his underwear and asked to put on some clothes. At this point, the officers quite properly accompanied defendant into his bedroom while he dressed. Ordinary prudence dictates nothing less to assure the safety of the arresting officer.

Finally, the facts and circumstances known to the officers at the time they seized defendant's clothing gave rise to a reasonable belief that the items constituted evidence of criminal activity. The record discloses that during an interview with the victim shortly prior to

defendant's arrest, the victim told officers that her attacker wore a plaid jacket or shirt and blue jeans, and that he had pulled hair from her head. The officers noticed at the time that the victim had long blond hair. Under these circumstances, when the officers entered defendant's bedroom and saw plaid shirts and blue jeans in a pile on the floor, with long blond hairs on one of the shirts, the incriminating nature of these items readily became apparent. Hence, the third requirement for a plain view seizure was met in this case.

Having determined above that the evidence in question was a proper seizure under the plain view doctrine, we hold that the denial of the motion to suppress evidence was not error.

## II

■ Defendant next posits that the denial of his motion to suppress photographic evidence was improper, assigning two grounds for error. First, he argues that the words "Thomas A. Testa, Sex Offender," appearing on the reverse side of his photograph, rendered the photographic evidence *prima facie* suggestive. This first argument must fail, however, since the victim testified that she looked only at the faces in the photographs and did not see the reverse sides. The trial court specifically found that the victim "never looked at the back of the pictures." We find no reason to disturb this finding, given the victim's unequivocal testimony and the trial court's superior position to evaluate her credibility.

Defendant's second ground for error pertains to a physical lineup which was conducted after the photographic identification and later suppressed by agreement of the parties. The physical lineup was composed of Latinos, while defendant is Italian. Defendant argues that the racial distinctness of this lineup rendered it suggestive and, under the "totality of the circumstances," indicates the use of generally suggestive procedures used by the police. He relies on *People v. Camel* (1974), 59 Ill. 2d 422, 431, 322 N.E.2d 36, which discussed the "totality of the circumstances" test set forth by the supreme court in *Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972, and restated in *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382. The court in *Camel* reiterated the following factors to be considered in evaluating the reliability of pretrial identification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and

the confrontation. *People v. Camel* (1974), 59 Ill. 2d 422, 431-32.

Application of these five factors in the instant case demonstrates that the victim's photographic identification was reliable. First, the victim had ample opportunity to view defendant at the time of the crime. She testified that she observed him for 7 to 10 minutes when he first grabbed her and struggled with her outside the car. At this time, fluorescent overhead lights were turned on in the parking lot. The victim stated she was able to view defendant's face for an additional 7 to 10 minutes while he attacked her inside the car; during this time the car's dome light was on because the driver's door was not completely closed.

Second, the victim viewed defendant's face with a heightened degree of attention; as a rape victim she "was no casual observer, but rather the victim of one of the most personally humiliating of all crimes." *(Neil v. Biggers* (1972), 409 U.S. 188, 200, 34 L. Ed. 2d 401, 412, 93 S. Ct. 375, 382-83.) Third, the witness' prior description of defendant was highly accurate and thorough. At the hearing on the motion to suppress identification, she recalled telling the police her attacker was "short, he looked Italian-looking; he had dark hair, dark eyes. I told *** [the police officers] that I had also scratched him under the eye, that he was wearing a plaid jacket, blue jeans and I described the car he was driving." When the police arrested defendant, they found clothing which matched this description and saw defendant had a scratch below his left eye. Fourth, the victim's identification demonstrated a high degree of certainty; she testified she stopped looking through the photographs when she came to defendant's "[b]ecause I looked at the face, and I knew without any question in my mind that this was the man." Finally, the victim identified defendant's photograph a short time after the crime.

Given these circumstances, we find that the photographic identification had ample reliability and the denial of defendant's motion to suppress this identification therefore was proper.

### III

■ Defendant further maintains that the trial court erred in denying his motion *in limine* to exclude the dates of his prior convictions for impeachment purposes. Initially, we note that defendant has waived this issue for our review by failing to raise it in his motion for a new trial. *(People v. Edwards* (1978), 74 Ill. 2d 1, 4, 383 N.E.2d 944, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862.) Assuming defendant has not waived this issue, we still find no merit to his claim. Whether a defendant's prior conviction may be dis-

closed for impeachment purposes is to be determined by the trial court based on the circumstances involved, and the trial court must be given considerable latitude in making the decision. (*People v. Mason* (1978), 61 Ill. App. 3d 918, 922, 378 N.E.2d 384.) Among the factors to be considered in exercising the court's discretion are the nature of the crime and its nearness or remoteness in time. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 518, 268 N.E.2d 695.) The supreme court in *Montgomery* adopted Federal Rule 609, which provides that evidence of a conviction is not admissible if more than 10 years have elapsed since the date of conviction or of the release of the witness from confinement, whichever is later.

In the case at bar, the defendant's prior convictions not only were well within the 10-year limit but were very recent in time. The convictions occurred on July 6, 1981, and December 28, 1981. Defendant testified at his trial for the instant offense on March 19, 1982, less than one year later. The fact that defendant's previous convictions were so recent in time made them particularly probative as to defendant's credibility. Consequently, the trial court correctly found that the probative value of the prior convictions, including the dates thereof, outweighed any prejudicial effect.

### IV

■ Defendant next claims that the trial court erred in restricting his cross-examination of the victim regarding a pending civil suit she filed against her employer for failure to provide a safe place to work. Defendant argues that this evidence was relevant to show the victim misidentified defendant due to her desire to name an offender and gain financially in her civil suit. The record reveals, however, that defendant failed to object to this matter in his motion for a new trial and, therefore, has waived the issue for purposes of review. *People v. Edwards* (1978), 74 Ill. 2d 1, 4, 383 N.E.2d 944, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862.

Even if we were to reach the merits of this issue, defendant's claim must still fail. Although a witness may be impeached by a showing of interest, bias, or motive to testify falsely, such evidence need not be admitted where it is remote or uncertain. (*People v. Triplett* (1981), 99 Ill. App. 3d 1077, 1084, 425 N.E.2d 1236.) The latitude permitted on cross-examination to establish bias is within the trial court's discretion. *Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 919, 408 N.E.2d 737.

Here, the evidence of the victim's civil suit against her employer was at best speculative and uncertain evidence of interest or bias. As

the trial court noted, the evidence establishes that in fact a rape took place in the parking lot patrolled by her employer and that in and of itself has nothing to do with the defendant. The victim, contrary to defendant's assertion, did not "need a rapist" or have to prove beyond a reasonable doubt that a particular person, in this case the defendant, committed the rape in order to prove her civil case. An acquittal for defendant would not preclude a showing by the victim that her employer had failed to provide a safe place in which to work. As such, we find that the trial court did not abuse its discretion in restricting the cross-examination in question.

## V

■ Defendant also maintains that certain comments by the State during closing argument and rebuttal were improper. Defendant first assigns error to the State's reference during rebuttal to a photograph of him with the words "Sex Offender" written thereon. We find no impropriety in this reference because the State may direct the jury's attention to matters appearing from the record. (*People v. Bach* (1979), 74 Ill. App. 3d 893, 897, 393 N.E.2d 563.) Here, the record reveals that during his cross-examination of Park Ridge police detective Terry Conley, defense counsel inquired, "Did you write the words which appear on the back of Tom Testa's photograph, Thomas A. Testa, Sex Offender, 02-28-59, Park Ridge, P.D.?" and "At that time was Tom Testa a convicted sex offender?" Given the fact that defendant introduced evidence with respect to the writing on the photograph, including the reference to defendant as a sex offender, it was not error for the State to comment thereon.

■ We further reject defendant's assertion that it was error for the State to comment during rebuttal on his failure to produce an alibi witness. Prior to trial, defendant indicated in his supplemental answer to the motion for discovery that he would raise an alibi defense at trial, and he listed Jeff Smith as a possible witness. During his direct examination at trial, defendant testified that he was with Jeff Smith at the time the rape was committed. During rebuttal, the assistant State's Attorney stated:

"Let me just talk a little bit about Jeff Smith. It is interesting that Jeff Smith provides Mr. Testa an alibi that is completely phoney, I mean, well, that is as intimated that Mr. Jeff Smith was with Testa and had been everywhere hw [*sic*] as [*sic*] that night, then say that Mr. Testa was only at the Snuggery Pub. Well, of course at that particular time he did not know that Terry Conley knew everywhere they had been. Now it is

 

interesting because at [*sic*] it occurs four days after the fact, and of course it is even more interesting that Mr. Smith is not produced, and certainly this appears—."

Defendant's objection to the above comments was overruled.

Although as a general rule it is improper for the State to comment on defendant's failure to call a witness who is equally accessible to both parties (see *People v. Pearson* (1972), 2 Ill. App. 3d 861, 863, 277 N.E.2d 544), this rule is not applicable in the present case. Where, as here, alibi witnesses are injected into a case by the defendant, they are deemed unavailable to the prosecution. Any comment with respect to the failure of such witnesses to testify therefore is proper. (*People v. Jackson* (1979), 79 Ill. App. 3d 660, 667, 398 N.E.2d 906; *People v. Mays* (1972), 3 Ill. App. 3d 512, 514, 277 N.E.2d 547.) Consequently, we find that the second rebuttal comment complained of was not error.

█ Defendant's third assignment of error concerns the following comment made by the State during closing argument: "Not one thing, nothing, not a whit of physical evidence that assist this defendant in his defense, nothing corroborates—." Defendant argues the comment infringed upon his presumption of innocence and shifted the burden of proof to him.

We find that the above comment on defendant's failure to produce physical evidence was proper because the State was permitted to direct the jury to the strength of its case. (*People v. Salazar* (1976), 37 Ill. App. 3d 800, 805, 347 N.E.2d 86; *People v. Carbona* (1975), 27 Ill. App. 3d 988, 1010, 327 N.E.2d 546, *cert. denied* (1975), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.) In *Carbona*, the defendant argued that the State's comment on the unrebutted nature of the State's ballistic evidence improperly diluted defendant's presumption of innocence. (27 Ill. App. 3d 988, 1010.) This court disagreed, stating that "it has been held that the prosecutor may comment on the defendant's failure to contradict the State's expert testimony. Such commentary does not shift the burden of proof to the defendant thereby diluting her presumption of innocence." 27 Ill. App. 3d 988, 1010.

Here, similar to *Carbona*, the State presented expert testimony regarding the various items of physical evidence. One expert testified that hair fibers found on defendant's clothes were consistent with hairs from the victim's head and could have originated from her. Another expert testified that seminal fluid was found on the victim's pantyhose and on vaginal swabs taken from the victim. Since the record reveals the absence of any evidence by defendant to contradict this expert testimony, the State properly commented thereon.

## VI

### A

■ Defendant also challenges his sentence on several grounds. He first urges that the trial court improperly considered evidence from the presentence investigation report (PSI) because it was never admitted into evidence. The State maintains, and we agree, that the trial court properly considered information from the PSI because such consideration was mandated by statute. Section 5—4—1(a) of the Unified Code of Corrections specifically provides that at the sentencing hearing "the court shall:

(1) consider the evidence, if any, received upon the trial;

(2) *consider any presentence reports*;

(3) consider evidence and information offered by the parties in aggravation and mitigation;

(4) hear arguments as to sentencing alternatives; and

(5) afford the defendant the opportunity to make a statement in his own behalf." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—4—1(a).)

Additionally, section 5—3—1 requires:

"A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—3—1.)

The requirement in section 5—3—1 has been construed as mandatory. (*People v. Lynch* (1984), 122 Ill. App. 3d 121, 124, 460 N.E.2d 817.) Given these statutory provisions, the court's consideration of the PSI was not error. We briefly note that the State, contrary to defendant's assertion, did not attempt to waive admission of the PSI. Although the State elected not to offer any evidence in aggravation, this election did not affect the court's consideration of the PSI, mandated pursuant to statute.

Defendant further contends that in sentencing him it was error for the trial court to consider information in the PSI of certain prior arrests because they did not result in convictions. The State contends that the consideration of this evidence was proper, citing *People v. La Pointe* (1981), 88 Ill. 2d 482, 499-501, 431 N.E.2d 344. In *La Pointe*, the supreme court held that a trial court may "properly receive proof of criminal conduct for which no prosecution and conviction ensued," with caution and sensitivity to possibilities of prejudice to defendant. *People v. La Pointe* (1981), 88 Ill. 2d 482, 499; *People v. Lieberman* (1982), 107 Ill. App. 3d 949, 959-60, 438 N.E.2d 516.) Here, we find

no prejudice to defendant nor error by the court as to this matter.

## B

■ We next consider defendant's argument that the extended-term sentence he received was excessive because his conduct was neither sufficiently brutal nor heinous to warrant a 50-year extended-term sentence. Section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)) provides that the court may impose an extended-term sentence for "exceptionally brutal or heinous behavior indicative of wanton cruelty." The determination and imposition of the extended-term sentence are within the sound discretion of the trial court; the reviewing court must give great deference to the trial court's determination and will not modify or vacate a sentence on appeal absent an abuse of discretion. (*People v. Jackson* (1984), 122 Ill. App. 3d 166, 169, 460 N.E.2d 904, *appeal denied* (1984), 101 Ill. 2d 549.

In the instant case, we find that the trial court did not abuse its discretion in determining that defendant's behavior was sufficiently brutal and heinous under the extended-term statute. The court focused on the manner in which the crime was committed, stating: "I consider it a heinous case because the evidence shows beyond a reasonable doubt *** [defendant] stalked the victim late at night in a parking lot. Stalked her. Grabbed her, and when she tried defending herself he throttled her with his hands." The court referred to a photograph of the victim, State's Exhibit 10, and commented that there were "[f]inger marks on the victim's throat where *** [defendant] throttled her and threw her into her car." The court further noted that defendant "[t]ore out whole handfuls of hair," and observed that another photograph of the victim showed "the viciousness of the attack." The court concluded: "In this Court's mind if this isn't torture then I don't know what torture is. To rip out handfuls of hair—. It is this Court's opinion if [the victim] resisted any further Tom Testa may have killed her."

We note that defendant argues his conduct was not heinous because he did not carry a weapon or verbally threaten the victim's life. This argument must fail in light of our recent holding in *People v. Jackson* (1984), 122 Ill. App. 3d 166, 460 N.E.2d 904, *appeal denied* (1984), 101 Ill. 2d 549. There, we affirmed a 40-year extended-term sentence for rape, finding that defendant's behavior was sufficiently heinous and brutal despite the absence of a weapon, any express threats on the victim's life, and lack of serious physical injury. 122 Ill. App. 3d 166, 169-70.

## C

██ Defendant further asserts that the trial court erred in directing that he serve his 50-year sentence for rape consecutively with his prior 15-year sentence for attempted rape. He alleges that a consecutive sentence was not justified under 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b)). This section, which allows for the imposition of a consecutive sentence provides:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

In imposing a consecutive sentence pursuant to the above provision, the trial court in this case concluded that defendant constitutes an ever present danger to the community and that the consecutive sentence was necessary to protect the public from further criminal conduct by defendant. The court based this conclusion on defendant's criminal background, including arrests in 1978 and 1979 for aggravated battery, indecent liberties with a child and public indecency, and his more recent convictions for attempted felonious assault and attempted rape. The court noted that defendant committed the rape in the present case while released on bond for the attempted rape charge. It further noted that defendant committed the attempted felonious assault in Ohio while released on bond for the instant crime. Additionally, the court considered the exceptionally brutal and heinous circumstances of the instant offense.

After carefully considering the record before us, we find ample support for the trial court's determination that the nature of the instant offense, coupled with defendant's history and character, justified a consecutive sentence.

Defendant also alleges it was error for his sentence to run consecutively because it was for an extended term. Defendant, however, cites no rationale or authority in support of his allegation. We find no merit to this contention since section 5—8—4(b) does not by its terms limit the imposition of a consecutive sentence to instances where a defendant has not been sentenced to an extended term. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b).) Moreover, this court previously has permitted extended-term sentences to run consecutively. *People v. Young* (1981), 96 Ill. App. 3d 426, 430-31, 420 N.E.2d 1051.

## VII

Finally, defendant contends that the trial court erred in denying his motion to modify his verdict. He alleges that the evidence presented in mitigation at his sentencing hearing indicated his verdict should be modified from guilty to guilty but mentally ill, under Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—6. Defendant's contention is unsupported by Illinois law.

The law provides that "mental illness is not an affirmative defense, but an alternative *plea* or *finding* that may be accepted, *under appropriate evidence,* when the affirmative defense of insanity is raised or the plea of guilty but mentally ill is made." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 6—4.) Further, section 115—4(j) of the Code of Criminal Procedure of 1963 states in part:

> "Unless the affirmative defense of insanity has been presented during the trial, the jury shall return a general verdict as to each offense charged ***. When the affirmative defense of insanity has been presented during the trial, the court, where warranted by the evidence, shall also provide the jury with a special verdict form of guilty but mentally ill, *** ." (Ill. Rev. Stat. 1981, ch. 38, par. 115—4(j).)

In the instant case, defendant failed to raise the insanity defense or even introduce any evidence regarding mental illness during his jury trial, as required under section 115—4(j). Rather, defendant raised only an alibi defense at trial, and first introduced evidence relating to mental illness at his sentencing hearing. We reject defendant's untimely attempt to change the strategy of his case from a plea of not guilty based on an alibi defense to guilty but mentally ill after the jury returned a guilty verdict.

We finally note that even after hearing testimony at the sentencing hearing from defendant's witnesses, the trial court remained unconvinced that defendant suffered from mental illness. Addressing defense counsel, the court stated: "[Y]our witness testified in all respects [that] your client, the defendant, Tom Testa, was completely normal." Accordingly, we conclude the trial court properly denied defendant's motion to modify the verdict.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG and CAMPBELL, JJ., concur.