2021 IL 126715

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126715)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
TWIQWON R. FANE, Appellee.

*Opinion filed December 16, 2021.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Garman, Overstreet, and Carter concurred in the judgment and opinion.

Justice Michael J. Burke dissented, with opinion, joined by Chief Justice Anne M. Burke and Justice Neville.

**OPINION**

¶ 1    At issue is whether the trial court abused its discretion by giving the jury a modified version of Illinois Pattern Criminal Jury Instruction No. 3.17 (2011) (hereinafter IPI Criminal No. 3.17), the accomplice witness instruction, when the alleged accomplice witness provided exculpatory testimony for defendant

Twiqwon R. Fane. We conclude that the Stephenson County circuit court did not abuse its discretion; therefore, we reverse the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        In December 2016, defendant was charged with, among other crimes, residential burglary (720 ILCS 5/19-3(a) (West 2016)), aggravated battery of a victim over 60 (*id.* § 12-3.05(d)(1)), home invasion (*id.* § 19-6(a)(2)), and resisting or obstructing a peace officer (*id.* § 31-1(a)).

¶ 4        At trial, Sergeant Timothy Weichel from the Freeport Police Department testified first for the State. Weichel explained that, on November 18, 2016, at 2:23 a.m., a 911 operator alerted him to a home invasion in progress. As Weichel approached the home, he heard a woman screaming. When he arrived at the door on the north side of the residence, Weichel saw a man standing inside the home. Weichel ordered him to get down, but the man fled. At trial, Weichel identified the man as Drean McGee.

¶ 5        The woman continued to scream as though she were being attacked, which suggested to Weichel that there was another perpetrator. By the time he entered the home, the woman told him that the suspects had fled. Weichel described the woman as distraught and noted that she had been injured.

¶ 6        Weichel left the residence to pursue the suspects. Hearing noise to the east of the home, he ran in that direction and radioed incoming units to inform them that the suspects were headed eastward. Roughly five minutes later, another officer reported that two people were running in a field approximately four blocks from the victim's home. When Weichel arrived, the other officer had two men in custody. Weichel identified defendant as the second man apprehended that day along with McGee. Weichel also explained that "there was a small area between the shed and the building where [defendant] was taken into custody." Weichel found a white T-shirt there. He directed another officer to collect the white T-shirt as evidence.

¶ 7        Freeport police corporal Ben Johnson testified that he heard Weichel's call for backup that morning and drove in the direction of the suspects. Johnson saw two men sprinting across a field. He got out of his squad car and ran after them, ordering

them to stop running several times. Ultimately, the men ran into a dead end. When Johnson caught up to them, McGee was "standing in the open," while defendant "attempt[ed] to conceal himself behind a shed along the building." Johnson withdrew his taser and ordered them to the ground. When another officer arrived, both men were handcuffed.

¶ 8       Freeport police officer James Darren Hodges testified that he transported defendant to the police station that morning. According to Hodges, while they were en route to the station, defendant volunteered that his girlfriend Gabby's car had been stolen the night before. After transferring defendant into custody, Hodges returned to the field where defendant and McGee were caught. Sergeant Weichel asked Hodges to retrieve a white T-shirt from where officers found defendant hiding. After taking a picture of it, Hodges placed the T-shirt into a bag to be placed into evidence. That morning, another officer also transferred a set of keys, key fob, and a key chain over to Hodges to be processed into evidence.

¶ 9       The other officer, Daniel Moore, testified that on November 18, 2016, he was sent to the victim's home around 2:30 a.m. While speaking with the victim, Voncile Modlinger, he noticed a set of car keys on the floor in front of the piano in the living room. Moore picked them up and asked Modlinger if they belonged to her. She said that they did not. Moore retained the keys "for the time being" before eventually giving them to Hodges to be put into evidence.

¶ 10      Defendant's former girlfriend Gabrielle Gill testified that she gave defendant and McGee permission to use her car the night before the incident. She further acknowledged that the prosecution possessed what appeared to be her keys for that car.

¶ 11      Modlinger was 92 years old at the time of trial. By November 2016, she had lived at her residence for more than 50 years. Her home was first broken into on November 12, 2016. That time, the intruder stole money and her cell phone. Modlinger bought another phone and kept it in bed beside her at night because she was frightened.

¶ 12      Six days later, on November 18, 2016, Modlinger heard a noise in the middle of the night. She immediately called 911 to report that someone had broken into her home. Modlinger gave the dispatcher her home's intersection when two men

walked into the room. One of them had a "white thing" covering his face; he hit Modlinger in the face with a plastic laundry basket that she kept near her bed.

¶ 13　　The assailant whose face was covered ordered her to get out of bed, and when she did, he lifted her mattress to search for money. He then grabbed Modlinger and started beating her. She described being "pounded up and down and thinking [her] legs [were] breaking." The next thing she remembered was that a police officer arrived. Modlinger testified that her face was bleeding and that she suffered physical pain that continued through the time of trial.

¶ 14　　McGee testified on defendant's behalf. He acknowledged that he had pled guilty to residential burglary and home invasion of Modlinger's residence. According to McGee, around midnight on the morning of the break-in, he, defendant, defendant's girlfriend, and others traveled by car to a tavern. After leaving the tavern, members of the group parted ways until defendant, McGee, and a man named James Beales were left in the car. McGee testified that Beales drove and that he ultimately dropped off defendant on a corner. McGee and Beales then drove around for 20 minutes or so and smoked cannabis while plotting the break-in.

¶ 15　　McGee testified that Beales selected Modlinger's home. When they arrived, Beales kicked the door in. Beales then dragged Modlinger out of bed while McGee searched for money. McGee stated that they had been in her home for 10 to 15 minutes when he opened the curtain to "check[ ] the premises." At that point, a police officer shone his light on McGee. McGee told Beales that they had to leave, and both men ran from the home in different directions.

¶ 16　　As he ran, McGee encountered defendant. McGee expressed surprise at seeing defendant but advised him to run too. Defendant told McGee that he had just conducted a drug deal and he felt that he had been set up. McGee was about to inform defendant of the break-in when an officer cornered them and ordered them to the ground.

¶ 17　　McGee testified that he and defendant had been friends for more than 15 years. McGee and defendant's half-sister were cousins, although defendant was not related to him by blood.

¶ 18 At the jury instructions conference, instructions such as IPI Criminal No. 2.03 ("Presumption Of Innocence—Reasonable Doubt—Burden Of Proof Generally") and IPI Criminal No. 3.12 ("Impeachment Of A Witness By Prior Conviction") were given without objection. Defendant did, however, object to the State's tender of IPI Criminal No. 3.17 ("Testimony Of An Accomplice"). IPI Criminal No. 3.17 provides: "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

¶ 19 Relying on this court's decision in *People v. Rivera*, 166 Ill. 2d 279 (1995), the State argued that this instruction was proper regarding McGee's testimony. It acknowledged that certain appellate court decisions had deemed it inappropriate to give IPI Criminal No. 3.17 when the accomplice witness's testimony completely exonerated the defendant, but the State argued that *Rivera* superseded those cases. The State also observed that McGee's testimony did not exonerate defendant with respect to the charge of resisting arrest.

¶ 20 The trial court recognized that the issue was significant. Therefore, it took a recess to review *Rivera* and other relevant cases. Upon its return, the trial court discussed *Rivera*, *People v. Touhy*, 361 Ill. 332 (1935), and other decisions in detail. In the court's view, the cases provided that where a defense witness's testimony failed to completely exonerate the defendant—and in fact, corroborated the State's case in an important way—the trial judge has discretion to give IPI Criminal No. 3.17.

¶ 21 Here, the trial court found that aspects of McGee's testimony corroborated the State's case on the charge of resisting or obstructing a peace officer. It also observed that McGee had pled guilty to offenses related to the break-in at issue in the proceedings. The trial court found that it was proper for the jury to hear McGee's testimony, but the court found it equally proper "for the jury to be alerted that this is the kind of testimony that Illinois courts have said should be treated with caution." Under these circumstances, where McGee admitted involvement in the offense and where, in the court's view, his testimony tended to implicate defendant, the court found that it should give the instruction to the jury, though with a modification. Taking language from *People v. Jackson*, 79 Ill. App. 3d 660 (1979),

the trial court suggested that the instruction be modified to state, "if the *** witness testified that he participated in the crime with which the defendant is charged." The court found that language to be "undeniable."

¶ 22　　For his part, defendant opposed giving the instruction and strenuously opposed any modification of it. In his view, a plain reading of IPI Criminal No. 3.17 showed that the instruction did not apply. Although McGee's testimony may have supported the charge of resisting arrest, defendant argued that such an insignificant charge should not be used to justify issuing such a meaningful instruction. Defendant also reminded the court of the importance of McGee's testimony to his defense. He noted the plethora of other ways available to the State to discredit his testimony. Defendant argued that to further instruct the jury to discredit McGee's testimony would significantly undermine his defense. He requested that the court decline to exercise its discretion to allow the instruction.

¶ 23　　In response, the State observed that the proposed modification was an accurate statement of the law and, thus, should be given. The State further asserted that McGee's testimony was suspect for many reasons and argued that it should not be prevented from presenting each of those reasons.

¶ 24　　The trial court asked the State to draft an instruction that was consistent with the one it had earlier suggested. When the State tendered its revised instruction, the trial court observed that it had been labeled "non-IPI." The court also noted that the instruction was "partially derived" from IPI Criminal No. 3.17 and *Jackson*. After confirming that defendant had no additional objection, the court noted that the instruction would be given over defendant's objection.

¶ 25　　The jury ultimately found defendant guilty of residential burglary, aggravated battery of a victim over 60, home invasion, and resisting or obstructing a peace officer. The court entered judgment on the verdicts. Defendant moved for a new trial, in part, on the ground that the trial court improperly gave the jury the modified version of IPI Criminal No. 3.17. Noting that it had thoroughly addressed the issue during the jury instruction conference, the court denied defendant's motion.

¶ 26　　The trial court initially sentenced him to 40 years' imprisonment. Defendant moved the court to reconsider the sentence, arguing, in part, that the court erred in finding defendant—who was 24 years old at the time of sentencing—to be beyond

rehabilitation. The court determined that its earlier sentence had not adequately considered defendant's potential for rehabilitation. Accordingly, it granted the motion and modified defendant's sentence to 30 years' imprisonment. Defendant appealed.

¶ 27 The appellate court stated that IPI Criminal No. 3.17 existed "to warn the jury that the witness might have a strong motivation to provide false testimony for the State in exchange for immunity or some other lenient treatment." (Internal quotation marks omitted.) 2020 IL App (2d) 180151, ¶ 33. Given the relationship between such a witness and the State, the court noted that "there may be a strong motivation to testify falsely for the accomplice who seeks, hopes or expects lenient treatment by the State in return for favorable testimony." (Internal quotation marks omitted.) *Id.*

¶ 28 The appellate court acknowledged that in *Rivera*, 166 Ill. 2d at 292, this court upheld the trial court's issuance of the accomplice witness instruction even though the witness had been called by the defendant. 2020 IL App (2d) 180151, ¶ 34. However, the appellate court noted that an unmodified version of IPI Criminal No. 3.17 was given to the jury in *Rivera*, so it found that that case was distinguishable. *Id.* ¶¶ 36-38. Reconciling *Rivera* and other decisions, the appellate court concluded that "the accomplice-witness instruction may be given where an alleged accomplice witness implicates a defendant" in a crime. *Id.* ¶ 38. Conversely, where an accomplice witness wholly exculpates a defendant, the court ruled that IPI Criminal No. 3.17 should not be given. *Id.*

¶ 29 In this case, where McGee's testimony represented defendant's entire defense and resolution of this case turned on the relative credibility of McGee and the State's witnesses, the appellate court found that the trial court's error could not be deemed harmless. *Id.* ¶ 40. The appellate court therefore reversed the trial court's judgment and remanded the case for further proceedings without addressing the second issue defendant raised on appeal. *Id.* ¶¶ 30, 43.

¶ 30 This court granted the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2020).

¶ 31                                      ANALYSIS

¶ 32        As we explained at the outset, the issue is whether the trial court abused its
discretion by giving a modified version of IPI Criminal No. 3.17 to the jury.

¶ 33        "Supreme Court Rule 451(a) (134 Ill. 2d R. 451(a)) requires a trial court to
instruct the jury pursuant to the IPI criminal instructions unless the trial court
determines that the IPI instruction does not accurately state the law." *People v.
Hudson*, 222 Ill. 2d 392, 399-400 (2006). And where there is no IPI jury instruction
regarding a subject on which the court determines the jury should be instructed, the
court has discretion to give a non-IPI instruction. *Id.* at 400. We review the trial
court's decision to instruct a jury using nonpattern instructions for an abuse of
discretion. *People v. Pollock*, 202 Ill. 2d 189, 211 (2002). "Whether a court has
abused its discretion will depend on whether the nonpattern instruction tendered is
an accurate, simple, brief, impartial, and nonargumentative statement of the law."
*Id.*

¶ 34        This court has observed that "juries are composed of laypersons who are not
trained to separate issues and to disregard irrelevant matters." *Dillon v. Evanston
Hospital*, 199 Ill. 2d 483, 507 (2002). As such, jury instructions "provide the jury
with correct legal principles that apply to the evidence, thus enabling the jury to
reach a proper conclusion based on the applicable law and the evidence presented."
*People v. Parker*, 223 Ill. 2d 494, 500 (2006). Given the prominent role they play
at trial, jury instructions "must state the law fairly and distinctly and must not
mislead the jury or prejudice a party." (Emphasis omitted.) *Dillon*, 199 Ill. 2d at
507.

¶ 35        This court has long deemed it appropriate to advise juries that an alleged
accomplice's testimony may be viewed with suspicion. For instance, in *People v.
Grove*, 284 Ill. 429, 434-35 (1918), we referenced "the rule of law that testimony
of an accomplice is to be received with caution and carefully scrutinized, and is
only to be accepted where the jury, after careful examination and consideration, are
convinced of its truth." See *People v. Wilson*, 66 Ill. 2d 346, 349 (1977) (observing
that this court has never questioned the wisdom of treating an accomplice witness's
testimony with skepticism and suspicion). The underlying rationale is that it is fair
to question the testimony of a witness who has admittedly participated in the crime
at issue in the proceedings. See, *e.g.*, *Hoyt v. People*, 140 Ill. 588, 595 (1892)

                                          - 8 -

("Accomplices, upon their own confession, stand contaminated with guilt" and are "of a tainted character, giving their testimony under the strongest motives to deceive." (Internal quotation marks omitted.) (citing 1 Esek Cowen, Notes to Phillips' Treatise on the Law of Evidence 111 (5th ed. 1868))).

¶ 36        IPI Criminal No. 3.17 reflects this rule. The instruction provides that, when "a witness says he was involved in the commission of a crime with the defendant," that witness's testimony is subject to suspicion and should be treated with caution. And, consistent with this court's prior rulings, the instruction applies to witnesses who testify for either the State or the defendant.

¶ 37        For example, in *Touhy*, after three accomplices to a kidnapping testified at trial, the jury was instructed, in part, that the "testimony of an accomplice is competent evidence but such testimony is liable to grave suspicion and should be acted upon with great caution." (Internal quotation marks omitted.) *Touhy*, 361 Ill. at 352. One of the witnesses testified on the defendant's behalf, and the defendant argued that a different rule should apply to the State's witnesses than to his witness.

¶ 38        This court observed that, "although the term 'accomplice' is generally applied to those testifying against their fellow-criminals [citation], an accomplice is one who is in some way concerned in or associated with another in the commission of a crime." *Id.* at 353. We further concluded that there was no reason "why one who is in fact an accomplice should not have his testimony scrutinized carefully before it is relied on, no matter on which side of the case he testified." *Id.*; see *People v. Krush*, 120 Ill. App. 3d 614, 618 (1983) ("The credibility of accomplice testimony cannot realistically be determined solely on the basis of which side called him as a witness ***."); see also *United States v. Bolin*, 35 F.3d 306, 308 (7th Cir. 1994) ("There is sound reason for a jury to examine closely the testimony of a former accomplice because his credibility is suspect, no matter which side has called him to testify or whether his testimony is exculpatory or inculpatory."); *State v. Anthony*, 749 P.2d 37, 44 (Kan. 1988) (holding "that a cautionary instruction on accomplice testimony is proper in all circumstances where an accomplice testifies" and noting that "[s]uch testimony on behalf of defendants is becoming more prevalent ***, particularly by spouses or convicted friends of the accused who have nothing to lose by taking the blame").

¶ 39    This court reaffirmed the rule recognized in *Touhy* in *Rivera*. There, accomplice witnesses who testified for both the State and the defendant had changed their stories regarding what transpired during the murder for which the defendant was ultimately convicted. *Rivera*, 166 Ill. 2d at 283-86. Before this court, the defendant argued that the trial court erred in failing to admonish the jury that IPI Criminal No. 3.17 applied only to the State's witness, not to his witness. *Id.* at 291. This court saw no reason why testimony from an accomplice on behalf of the defendant should not be scrutinized as cautiously and strictly as testimony from an accomplice on behalf of the State. *Id.* at 292. Reasoning that the defense witness's credibility "was clearly suspect," we ruled that "the trial judge should have discretion to decide whether to advise the jury to accept an accomplice's testimony with caution." *Id.* at 293. Following *Rivera*, the Supreme Court Committee on Jury Instructions in Criminal Cases has recommended that IPI Criminal No. 3.17 "be given any time an accomplice testifies." IPI Criminal No. 3.17, Committee Note (approved Oct. 17, 2014).

¶ 40    Returning to this case, the trial court determined that IPI Criminal No. 3.17 could not be given in its unmodified form. IPI Criminal No. 3.17 applies "[w]hen a witness says he was involved in the commission of a crime with the defendant." McGee testified, however, that he and another man committed the crime and that defendant did not participate. Thus, it may have confused the jury to receive IPI Criminal No. 3.17 as written because the language of the instruction did not correspond with McGee's testimony.

¶ 41    That said, the trial court also recognized that McGee was indisputably associated with defendant in the crime of resisting or obstructing a peace officer, making him an accomplice. See *Touhy*, 361 Ill. at 352. And the court determined that the jury should be advised that McGee's testimony was of the sort that Illinois courts have treated with caution. Therefore, in reliance on *People v. Jackson*, 79 Ill. App. 3d 660 (1979), the trial court modified IPI Criminal No. 3.17. See generally *People v. Mohr*, 228 Ill. 2d 53, 65 (2008) (observing that the record must contain some evidence to justify a jury instruction and noting that the trial court has discretion to determine whether an instruction should be given).

¶ 42    In *Jackson*, the defendant's witness had been convicted as a participant in the robbery with which the defendant was charged. The witness testified that he and

another man committed the robbery, not the defendant. On appeal, the defendant contended that, because the witness exonerated him, the trial court erred in giving IPI Criminal No. 3.17. The appellate court ruled that IPI Criminal No. 3.17 was "not a correct instruction when a witness testifies that he participated in the crime with which the defendant is charged, but exonerates the defendant." *Jackson*, 79 Ill. App. 3d at 665. Rather, the court determined,

> "[i]t would have been better if the trial court had cautioned the jury concerning testimony of a witness who testifies he participated in the crime with which the defendant is charged, rather than of a witness who testifies that he was involved in the commission of a crime with the defendant." (Internal quotation marks omitted.) *Id.* at 666.

That said, the court found that there was "nothing inherently unfair about a trial court cautioning the jury concerning the value of such testimony, at least when some basis exists for believing the witness had a motive to fabricate testimony favorable to defendant." *Id.* at 665.

¶ 43 Against that legal background, we hold that the trial court did not abuse its discretion in giving the jury the challenged instruction. This court has determined that an accomplice witness's testimony may be treated with skepticism, whether the witness testifies for the State or for the defendant. Further, the trial court has discretion to give a non-IPI instruction so long as it is an accurate, impartial, and nonargumentative summation of the law. The instruction here met those criteria. It warned the jury to be cautious of McGee's testimony as an accomplice, but because McGee did not testify that he committed the crime with defendant, the trial court appropriately adjusted the wording of the instruction.

¶ 44 Defendant contends that the only purpose of the accomplice witness instruction is to warn the jury that an accomplice may have a strong motive to provide false testimony for the State in exchange for immunity or some other lenient treatment. Defendant relies on decisions like *People v. Dodd*, 173 Ill. App. 3d 460, 466-67 (1988), where the court ruled that the instruction "should not be given where the witness' testimony completely fails to implicate the defendant, because the instruction may tend to unduly derogate the defendant's ability to use favorable testimony by an accomplice." Thus, in defendant's view, the trial court's modified instruction failed to accurately convey the law.

¶ 45     Plainly, one of the purposes of the accomplice witness instruction is to caution the jury that the witness may be testifying falsely in exchange for favorable treatment from the State. See, *e.g.*, *People v. Williams*, 147 Ill. 2d 173, 232 (1991) ("The testimony of an accomplice witness ' "has inherent weaknesses, being testimony of a confessed criminal and fraught with dangers of motives such as malice towards the accused, fear, threats, promises or hopes of leniency, or benefits from the prosecution." ' " (quoting *People v. Young*, 128 Ill. 2d 1, 47-48 (1989), quoting *People v. Hermens*, 5 Ill. 2d 277, 285 (1955))). Yet, it is equally plain that courts have looked askance at an accomplice's testimony regardless of which party offers it and have upheld issuing the instruction when the witness gave exculpatory testimony for the defendant. *Touhy*, 361 Ill. at 353; *Krush*, 120 Ill. App. 3d at 618 ("[W]hether the accomplice testifies for the State or defendant, the trial court should have discretion to advise the jury to accept the testimony with caution.").

¶ 46     We also reject defendant's argument that tendering IPI Criminal No. 3.17 (and any modifications of it) to the jury is appropriate only when the accomplice witness implicates the defendant in a crime. Notably, the defendant's witness in *Touhy* did not claim that the defendant was involved in the kidnapping. See 361 Ill. at 342-43. This court nonetheless determined that the trial court did not err in giving the accomplice witness instruction as to the witness. We adhere to that position and maintain that a trial court need not find "implication" before giving the accomplice witness instruction.

¶ 47     Defendant further observes that a defendant's spouse, friend, or business partner usually brings bias to court when testifying, but he argues that only the potential bias of seeking leniency from the prosecution warrants instructing the jury to consider the testimony with suspicion and caution. However, as this court has noted, the testimony of an accomplice is that of a "confessed criminal." *Williams*, 147 Ill. 2d at 232. And though the accomplice's testimony is competent evidence (*People v. George*, 49 Ill. 2d 372, 382 (1971)), we have found that a trial court does not abuse its discretion in cautioning the jury about the accomplice's testimony, (*Rivera*, 166 Ill. 2d at 293).

¶ 48     Settled law provides that "[a]n abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted). *People*

*v. King*, 2020 IL 123926, ¶ 35. Here, where the court gave the jury an instruction that accurately described the law on testimony from an accomplice and that conformed to the witness's testimony, no abuse of discretion occurred.

¶ 49                                     CONCLUSION

¶ 50       The trial court appropriately exercised its discretion in instructing the jury with a modified version of IPI Criminal No. 3.17. Accordingly, we reverse the appellate court's judgment and remand to the appellate court to consider defendant's remaining claim.

¶ 51       Appellate court judgment reversed.

¶ 52       Cause remanded.

¶ 53       JUSTICE MICHAEL J. BURKE, dissenting:

¶ 54       The accomplice witness instruction (Illinois Pattern Criminal Jury Instruction No. 3.17 (2011) (hereinafter IPI Criminal No. 3.17)) is designed to alert the jury to a witness's motivation to testify falsely for the State in exchange for leniency. See, *e.g.*, *People v. Wilson*, 66 Ill. 2d 346, 349 (1977). The pattern instruction should be given at the request of the *defendant* if the totality of the evidence and the reasonable inferences therefrom establish probable cause to believe that the witness participated in the crime, either as a principal or under a theory of accountability. *People v. McCallister*, 193 Ill. 2d 63, 89 (2000).

¶ 55       Defendant did not request IPI Criminal No. 3.17, and I agree with the majority that the record does not support the use of the pattern instruction. *Supra* ¶ 43; *People v. Mohr*, 228 Ill. 2d 53, 65 (2008).

¶ 56       However, I respectfully disagree with the majority that the State's cautionary instruction was appropriate in this case, where McGee testified to his involvement in the charged offenses but exonerated defendant. The trial court abused its discretion in giving the nonpattern instruction because it distorted the definition of "accomplice" and the law on which IPI Criminal No. 3.17 is based. The errant

- 13 -

instruction unduly prejudiced defendant's ability to use favorable testimony from McGee.

¶ 57     Furthermore, the error was avoidable, as McGee's testimony was already covered by the general pattern instruction on witness credibility, IPI Criminal No. 1.02, which was given to the jury. When a witness admits his own involvement in the charged offense but denies the defendant's involvement, IPI Criminal No. 1.02 can be used to instruct the jury to consider the witness's biases and prejudices that potentially affect his testimony. Today, the majority has opened the door to giving nonpattern instructions that misstate the law on accomplice witness testimony and conflict with IPI Criminal Nos. 1.02 and 3.17.

¶ 58     I further conclude that the State forfeited its argument that any error resulting from the nonpattern instruction was harmless. Because the instructional error entitles defendant to a new trial, I respectfully dissent.

¶ 59               A. IPI Criminal No. 3.17 and the Nonpattern Instruction

¶ 60     The majority holds that, when a witness testifies to his involvement in the charged offense, a cautionary instruction is appropriate regardless of whether the testimony implicates or exonerates the defendant. The majority cites *Hoyt v. People*, 140 Ill. 588 (1892), *People v. Grove*, 284 Ill. 429 (1918), and *Wilson* for the proposition that the nonpattern cautionary instruction was appropriate in this case because IPI Criminal No. 3.17 is based on the witness's diminished credibility from admitting his own involvement in the charged offense, not on his status as the defendant's accomplice. At first blush, *Hoyt*, *Grove*, and *Wilson* seem to support the majority's rationale, but a closer reading of those decisions shows cautionary instructions are given because the witness implicates himself *and* the defendant.

¶ 61     The majority cites *Hoyt* for the underlying rationale that " '[a]ccomplices, upon their own confession, stand contaminated with guilt' " and " 'it is fair to question the testimony of a witness who has admittedly participated in the crime at issue in the proceedings.' " *Supra* ¶ 35 (quoting *Hoyt*, 140 Ill. at 595, citing 1 Esek Cowen, Notes to Phillips' Treatise on the Law of Evidence 111 (5th ed. 1868)). But *Hoyt* actually undermines the majority's position, as it teaches that the skepticism accorded accomplice testimony is rooted in the witness's motivation to blame the

accused, not just in the witness admitting involvement in the charged offense. The *Hoyt* court explained that testimony is worthy of skepticism when the witness implicates the accused, because the witness is motivated by the possibility of prosecutorial leniency:

> "[Accomplice testimony] is liable to grave suspicion, and should be acted upon with the utmost caution, for otherwise the life or liberty of the best citizen might be taken away on the accusation of the real criminal, made either to shield himself from punishment or to gratify his malice ***: Accomplices, upon their own confession, stand contaminated with guilt. They admit a participation in the very crime which they endeavor, by their evidence, to fix upon the prisoner. They are sometimes entitled to even a reward upon obtaining a conviction, and always expect to earn a pardon." (Internal quotation marks omitted.) *Hoyt*, 140 Ill. App. 3d at 595 (citing Cowen, *supra*, at 111).

¶ 62 The majority's reliance on *Grove* is similarly misplaced. As in *Hoyt*, the witness in *Grove* admitted involvement and inculpated the accused. The *Grove* court explained,

> "If an accomplice gives testimony which tends in any degree to exonerate himself or to lay the blame of the transaction upon another or it appears that he will be the gainer in any way by his testimony, such facts should have great weight with the jury and trial court ***." *Grove*, 284 Ill. at 435.

¶ 63 Finally, the majority points out that, in *Wilson*, we observed that this court has never questioned the wisdom of treating an accomplice witness's testimony with suspicion. *Supra* ¶ 35. But the *Wilson* court emphasized that accomplice testimony "is fraught with serious weaknesses such as the promise of leniency or immunity and malice toward the accused." *Wilson*, 66 Ill. 2d at 349.

¶ 64 The concerns expressed in *Hoyt*, *Grove*, and *Wilson* are embodied in IPI Criminal No. 3.17. The pattern instruction is labeled "Testimony Of An Accomplice" (IPI Criminal No. 3.17), and *People v. Rivera*, 166 Ill. 2d 279, 292-93 (1995), holds that the instruction may be used when a witness testifies (or his prior statement is admitted as substantive evidence) that he acted as an accomplice together with the defendant in committing the charged offense. According to the instruction's unambiguous language, a witness does not qualify as an "accomplice"

for purposes of IPI Criminal No. 3.17 unless he commits the crime *with the defendant*.

¶ 65   The majority refers to the nonpattern instruction used at trial as a "modified" version of IPI Criminal No. 3.17, when in fact the instruction turned the accomplice witness instruction on its head. The nonpattern instruction redefined "accomplice" simply as someone who was involved in the charged offense. Because an accomplice is one who is in some way concerned in or associated *with another* in the commission of a crime (*supra* ¶ 38), a person who testifies he committed a crime without the defendant's involvement cannot be considered the defendant's accomplice unless the witness is presumed to be lying. Thus, the nonpattern instruction distorted the pattern instruction to effectively instruct the jury that the witness should not be believed.

¶ 66   IPI Criminal No. 3.17 is based on the unique relationship between the prosecution and an accomplice who gives testimony against the defendant. *People v. Howard*, 130 Ill. App. 2d 496, 498 (1970). The relationship may create a strong motivation for an accomplice to seek, expect, or hope for favorable treatment by the prosecution if his testimony favors the State. *Id.*

¶ 67   By contrast, a witness who admits involvement in the charged offense but exonerates rather than implicates the defendant is risking disfavor by the prosecution, and the same reasons for discrediting the witness's testimony do not exist. *Id.* The decisions cited by the majority do not support giving a cautionary instruction when a witness like McGee gives testimony that attempts to shield the defendant from blame.

¶ 68   In *People v. Touhy*, 361 Ill. 332 (1935), and *Rivera*, this court held that IPI Criminal No. 3.17 may be given regardless of whether the witness is called by the prosecution or the defense. But neither decision compels the result reached by the majority.

¶ 69   In *Touhy*, three witnesses gave testimony regarding the defendant's involvement. Two admitted their guilt and testified for the State. The third witness had been convicted of the offense but persisted at Touhy's trial in denying that an offense occurred. The *Touhy* court held the cautionary instruction applied to all three, regardless of which side they testified for. *Id.* at 352-53.

¶ 70    The State argues the instruction was appropriate in *Touhy* simply because the witness who implicated the defendant was not credible. But the *Touhy* court did not cite poor credibility as a reason to give the instruction. *Id.* at 352 ("The only objection made at the trial to this instruction by counsel for the defendants was, 'that [the witness] does not come in the class of accomplice, not having been called by the State but having been called by defendants.' "). The policy underlying the accomplice witness instruction did not inform *Touhy*'s analysis. *Howard*, 130 Ill. App. 2d at 497-99.

¶ 71    Moreover, the *Touhy* court's ruling can be viewed as an attempt to avoid the disparate treatment of witnesses who give conflicting accounts of the defendant's involvement in the charged offense, a concern that is not raised in this case. *Touhy*, 361 Ill. at 353 (the jury should view the testimony of each witness similarly, "no matter on which side of the case he testified").

¶ 72    Like *Touhy*, *Rivera* involved multiple witnesses who admitted involvement in the charged offenses but gave conflicting testimony regarding the defendant's involvement. Norman, a codefendant, testified that he acted alone. Meger testified that Rivera also was involved. This court held that the accomplice witness instruction could be given for Norman even though he gave trial testimony exonerating Rivera. *Rivera*, 166 Ill. 2d at 291-92. This court stated:

    "We continue to adhere to this court's position in *Touhy*. We can think of no reason why codefendant Norman's testimony should not be scrutinized as cautiously and strictly as Meger's testimony. Norman was a convicted murderer and admitted perjurer, and his testimony at Rivera's trial was inconsistent with his prior testimony at his own trial. Norman's credibility was clearly suspect, and in such a case, the trial judge should have discretion to decide whether to advise the jury to accept an accomplice's testimony with caution. The trial court, therefore, did not err in refusing to limit the accomplice instruction to Meger." *Id.* at 293.

¶ 73    Although Norman attempted to exonerate Rivera at Rivera's trial, Norman's testimony at his own trial implicated Rivera and the inculpatory testimony was admitted as substantive evidence at Rivera's trial. The pattern instruction applied to Norman because the jury heard his prior testimony that he was involved in the commission of the offense with Rivera.

¶ 74    In contrast to Norman, McGee gave testimony that was "wholly exculpatory." 2020 IL App (2d) 180151, ¶ 39. The *Rivera* court must have deemed Norman's prior testimony sufficient to trigger giving the accomplice instruction; otherwise, the trial court would have modified the instruction like the trial court did here. *Id.* ¶ 37.

¶ 75    *Touhy* and *Rivera* illustrate that the prosecution and the defense can present witnesses who admit criminal involvement but offer conflicting testimony concerning the defendant's involvement. When the jury hears conflicting testimony on the defendant's culpability, the testimony should be viewed similarly, subject to suspicion and considered with caution according to IPI Criminal No. 3.17. By contrast, this case involves a single witness who exonerated defendant, so IPI Criminal No. 3.17 does not apply. *Touhy* and *Rivera* are each factually distinguishable from this case and do not compel the result reached by the majority.

¶ 76    The majority endorses the use of a nonpattern instruction that is not supported by the underlying rationale of IPI Criminal No. 3.17, which is to aid the defense. The majority radically expands the permitted use of cautionary instructions to specifically derogate witnesses giving testimony favorable to the defense, contrary to the purpose of the pattern instruction. This decision could be interpreted to mean exculpatory testimony generally warrants giving a nonpattern cautionary instruction whenever a witness admits criminality and displays a bias in favor of the defendant. *Supra* ¶ 38 (" '[s]uch testimony on behalf of defendants is becoming more prevalent ***, particularly by spouses or convicted friends of the accused who have nothing to lose by taking the blame' " (quoting *State v. Anthony*, 749 P.2d 37, 44 (Kan. 1988))). An accomplice's motive for prosecutorial leniency or animus toward the defendant warrants giving IPI Criminal No. 3.17 because the instruction applies to the unique bias arising when a witness testifies to his involvement in the commission of the crime with the defendant. But the majority suggests a cautionary instruction may be given for any witness who has "nothing to lose by taking the blame."

¶ 77    The majority mentions that the trial court found that McGee was associated with defendant in the crime of resisting or obstructing a peace officer. *Supra* ¶ 41. But if McGee's testimony sufficiently inculpated defendant, the trial court could have used IPI Criminal No. 3.17. The court, by using the nonpattern instruction,

effectively disregarded the inculpatory testimony concerning the resisting charge. This supports defendant's argument that the resisting charge was trivial compared to the other offenses of which he was convicted.

¶ 78                                    B. IPI Criminal No. 1.02

¶ 79        Illinois Supreme Court Rule 451(a) (eff. Apr. 8, 2013) requires a trial court to instruct the jury pursuant to the IPI criminal instructions unless the trial court determines that the IPI instruction does not accurately state the law. *Supra* ¶ 33. The majority concludes the nonpattern instruction was appropriate because there was no IPI jury instruction on the subject of McGee's credibility. I respectfully disagree.

¶ 80        IPI Criminal No. 1.02 ("Jury Is Sole Judge Of The Believability Of Witnesses"), broadly addresses the credibility of witnesses, including those who are implicated in (or already convicted of) the charged offense and are motivated to give testimony helpful to the defense.

¶ 81        IPI Criminal No. 1.02 provides,

> "Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, [his age,] his memory, his manner while testifying, *any interest, bias, or prejudice he may have*, and the reasonableness of his testimony considered in the light of all the evidence in the case.
>
> [You should judge the testimony of [ (a) (the) ] defendant[s] in the same manner as you judge the testimony of any other witness.]" (Emphasis added.)

¶ 82        IPI Criminal No. 1.02 permits the State to argue against the credibility of a witness who admits involvement in the charged offense but exonerates the defendant; the pattern instruction sufficiently addressed McGee's interest in swearing defendant out of the charges. Because IPI Criminal No. 1.02 could be applied to McGee's testimony, the nonpattern cautionary instruction used at trial was not an accurate, impartial, or nonargumentative statement of the law.

¶ 83    This court has acknowledged the relevance of IPI Criminal No. 1.02 to accomplice witness testimony, albeit in the context of the errant omission of IPI Criminal No. 3.17. In *McCallister*, we rejected an ineffective assistance claim based on trial counsel's failure to request IPI Criminal No. 3.17. This court held that, even if counsel's omission amounted to deficient performance, the defendant did not show prejudice as required by *Strickland v. Washington*, 466 U.S. 668 (1984). The omission did not prejudice the defendant, in part, because the trial court used IPI Criminal No. 1.02. *McCallister*, 193 Ill. 2d at 90-91.

¶ 84    This court observed that, "while the jury in this case did not receive the accomplice witness instruction with respect to [the witness], it did consider, in general terms, any 'interest, bias or prejudice' that [the witness] had in testifying as he did." *Id.* at 96. We concluded the trial court's use of the general instruction on witness credibility "may be considered as one factor, *among others*, which establishes that [the] defendant was not prejudiced by his trial counsel's failure to tender the accomplice witness instruction." (Emphasis in original.) *Id.* at 97.

¶ 85    The *McCallister* court held the general instruction on witness credibility may not, by itself, be enough to cure the errant omission of an accomplice witness instruction when the witness implicates the accused. *Id.* at 96. But in doing so, this court acknowledged the overlap between IPI Criminal Nos. 1.02 and 3.17.

¶ 86    To be clear, IPI Criminal No. 1.02 is not a substitute for IPI Criminal No. 3.17 in situations where the accomplice witness instruction is required. However, the general instruction on witness credibility instructs the jury to consider a witness's interest, bias, or prejudice and applied to McGee's testimony in this case. By contrast, a cautionary instruction used to single out a witness who admits involvement in an offense but has a motive to give testimony favorable to the defendant runs contrary to IPI Criminal Nos. 1.02 and 3.17.

¶ 87                                    C. Harmless Error

¶ 88    The State argues that any error was harmless because the outcome would not have been different if the nonpattern instruction had not been used at trial. Defendant responds that the State forfeited the issue by failing to raise it in its petition for leave to appeal. See *People v. McCarty*, 223 Ill. 2d 109, 122-23 (2006).

- 20 -

Defendant speculates that the State deliberately omitted the harmless error argument from the petition because it would have diminished the general importance of the question presented. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2020). Defendant describes the forfeiture as strategic, because this court would have been less inclined to grant the State's petition if the appeal could have been decided without clarifying our prior decisions concerning accomplice witness testimony.

¶ 89        The State concedes in its reply brief that its petition for leave to appeal did not include a harmless error argument. However, the State claims forfeiture is a "principle of administrative convenience," not a jurisdictional bar to supreme court review. The State contends the harmless error issue is reviewable because it is "inextricably intertwined" with the jury instruction issue. See *In re Rolandis G.*, 232 Ill. 2d 13, 37 (2008). I disagree.

¶ 90        This court routinely holds defendants to their forfeiture of issues not raised below. It is only fair to hold the State to the same standard, especially when the forfeiture conferred a tactical advantage earlier in the proceedings. I conclude the State should be held to its forfeiture of the harmless error issue because it failed to raise it in the petition for leave to appeal.

¶ 91        If this court were to reach the issue, I would further conclude that the trial court's erroneous use of the nonpattern instruction was not harmless, though the harm resulting from the error is a very close issue.

¶ 92        The State asserts "defendant's jury had ample reason to doubt McGee's veracity even without receiving IPI [Criminal No.] 3.17." According to the State, McGee's account of the events was not credible. He testified that he drove with defendant to the victim's neighborhood, dropped off defendant before committing the home invasion with someone else, and then coincidentally crossed paths with defendant just before the arrest. McGee and defendant were caught together four blocks from the crime scene and five minutes after the police saw McGee flee from the victim's home. Defendant was arrested with a white T-shirt, something that could have been used as the face covering the victim saw on the second offender.

¶ 93        Nevertheless, the appellate court found the instructional error was not harmless because "McGee's testimony represented defendant's entire defense, and

resolution of this case turned on the relative credibility of McGee and the State's witnesses." 2020 IL App (2d) 180151, ¶ 40. I agree.

¶ 94 The defense was based on challenging identity, which depended entirely on McGee's credibility. Instructing the jury that McGee's testimony was especially suspect derogated the credibility of the only witness giving testimony favorable to the defense. I conclude the trial court's abuse of discretion was not harmless. For these reasons, I would affirm the judgment of the appellate court, reverse the judgment of the circuit court, and remand the cause for further proceedings. The evidence presented at defendant's trial was sufficient to prove his guilt beyond a reasonable doubt, and defendant does not challenge the sufficiency of the evidence. Therefore, double jeopardy would not preclude a retrial. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995).

¶ 95 CHIEF JUSTICE ANNE M. BURKE and JUSTICE NEVILLE join in this dissent.