2023 IL App (2d) 220450-U
No. 2-22-0450
Order filed August 21, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-706 |
| CHRISTOPHER GERKEN, | ) ) | Honorable Marcy Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in summarily dismissing defendant's postconviction petition; defendant's claim was forfeited as it could have been raised on direct appeal and, in any event, defendant was not entitled to an "accomplice-witness" jury instruction.

¶ 2    A jury found defendant, Christopher Gerken, guilty of first-degree murder in the shooting death of Matthew Clark, a known drug dealer, and was sentenced to 60 years' imprisonment. Defendant now appeals from the dismissal of his *pro se* postconviction petition. He contends that the trial court should have advanced the petition to second-stage proceedings because his trial

counsel was ineffective for failing to request an "accomplice-witness" jury instruction, and his direct-appeal counsel was ineffective for failing to raise the issue in his first appeal. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The facts of this case were extensively detailed when we affirmed defendant's convictions on direct appeal (see *People v. Gerken*, 2021 IL App (2d) 170839-U) and need not be repeated at length.

¶ 5      On October 6, 2015, Trevor Motsinger called 9-1-1 from just outside Clark's apartment in De Kalb to report that Clark had been shot. Motsinger told the dispatcher that he did not know the person who shot Clark and said he saw the suspect run off in a particular direction. Both of those statements were lies. Motsinger knew defendant shot Clark and gave the authorities the wrong direction that defendant ran off in. Motsinger was later arrested, for cocaine possession, at the scene.

¶ 6      At defendant's trial, Motsinger explained that he had been friends with defendant since childhood. Clark was Motsinger's recent acquaintance, whom Motsinger met through Clark's girlfriend, who lived with her young daughter and Clark. That summer, Motsinger worked as a middleman distributing Clark's cocaine. On September 29, 2015, defendant drove Motsinger to the apartment. Motsinger went inside and brought what he believed was 1.5 grams of cocaine out to defendant. Defendant remarked that it felt "a little short" and Motsinger went back inside. Clark reweighed the cocaine and agreed that it was short; he added the difference, and Motsinger brought it back to defendant who appeared satisfied. Defendant then drove Motsinger home.

¶ 7      Later, defendant texted Motsinger to say he was not satisfied and wanted a refund. Motsinger informed Clark, who replied via text message that defendant was "a bitch." After Motsinger texted defendant that Clark would not be remedying the situation to defendant's

satisfaction, defendant texted back that he was short $50 worth of cocaine, that he "need[ed]" the missing amount, and then said, "I want my shit one way or the other." Defendant also accused Motsinger of having "got down" on him and having been involved with the missing cocaine. Motsinger told defendant he would speak to Clark and address defendant's problem.

¶ 8 On October 6, 2015, defendant texted Motsinger that he wanted a "ball"—which is short for an "eight ball," one-eighth an ounce, or 3.5 grams of cocaine. As before, defendant picked up Motsinger and drove to Clark's apartment, but this time, defendant parked in a different area than before.

¶ 9 As they sat in the van, defendant pulled out a pistol—a .357 magnum revolver—and concealed it on his person in either his hoodie or his waistband. Motsinger saw the gun and told defendant "[d]on't do it" reminding defendant that Clark lived with his girlfriend's child (who often slept in the front room) and that defendant had children of his own. Defendant indicated that, at most, he was only going to "scare" Clark if necessary. As they walked towards Clark's residence, defendant appeared calm, but eventually said, "I'm not no bitch."

¶ 10 Motsinger walked up the stairs to the door to the apartment. Clark opened the door and stepped out onto the porch. Motsinger told Clark that defendant was downstairs, and Clark told defendant to come upstairs. When defendant came upstairs, he and Clark began to scuffle and pulled at each other's arms and hands, as if trying to grab something away from each other. Motsinger stepped back, away from the scuffle. Clark pulled away from defendant, went inside, and closed the door. Then, defendant fired one shot through the door, striking Clark. Defendant then fled on foot.

¶ 11 Motsinger started knocking on the door; Clark opened it and said that he had been shot. Motsinger went inside and checked on Clark, and Clark handed him money and cocaine as he sat,

dying. Motsinger also made sure Clark's girlfriend and her daughter were not hurt. Then, he called 9-1-1 and, again, reported that Clark had been shot, but Motsinger lied and said he did not know who shot Clark and gave the dispatcher a different direction from where defendant ran off.

¶ 12    The police quickly arrived but Clark ultimately died from his wound. Motsinger gave the police several different stories about the events surrounding the shooting and who the perpetrator was. Motsinger said he was scared for himself and his family, which was why he lied. He eventually consented to a search of his cell phone and told the police that defendant shot Clark. Motsinger pled guilty to cocaine possession and agreed to testify truthfully at defendant's trial.

¶ 13    Defendant was later arrested by the police and the SAR .357 magnum revolver, which fired the shot that killed Clark, was found in his possession. Defendant testified that he believed Clark was armed and that he shot Clark in self-defense. Based on defendant's testimony, the jury was instructed on self-defense and second-degree murder. The jury ultimately found defendant guilty of first-degree murder, and the trial court sentenced him to 60 years' imprisonment.

¶ 14    On direct appeal, defendant contended that his trial was rendered unfair because (1) a venireperson possibly mentioned a newspaper article about the case, which referenced defendant's lengthy criminal history, (2) a police officer gave emotional testimony about Clark's final moments and embraced the victim's family after testifying, and (3) the prosecution's comments during closing argument. We rejected defendant's contentions and affirmed his conviction and sentence. See *Gerken*, 2021 IL App (2d) 170839-U, ¶¶ 46, 53, 59, 64. (Separately, defendant also pled guilty to one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)) and was given an additional five-year sentence. That conviction was not at issue in defendant's direct appeal or this appeal.)

¶ 15    In 2022, defendant filed a *pro se* postconviction petition, which raised eight ineffective-assistance claims, including that his trial counsel should have sought "a jury instruction regarding accomplice testimony." We note that the *pro se* petition made no mention of ineffectiveness by defendant's direct-appeal counsel. The trial court found that defendant's petition lacked merit and issued a two-page memorandum order summarily dismissing it. Defendant appealed, and the trial court appointed the Office of the State Appellate Defender to represent him.

¶ 16                                                    II. ANALYSIS

¶ 17    Before this court, defendant has abandoned seven of his eight postconviction claims. He contends that the sole issue in this appeal is whether trial counsel was ineffective for failing to request the accomplice-witness instruction Illinois Pattern Jury Instructions, Criminal, No. 3.17 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.17). The State contends that defendant forfeited this argument by not raising it on direct appeal, and by failing to claim in his *pro se* petition that appellate counsel was ineffective. Forfeiture aside, the State also contends the trial evidence did not warrant an instruction treating Motsinger as an accomplice, and alternatively that the failure to request the instruction was harmless. For the reasons that follow, we agree with the State.

¶ 18    Before we turn to these issues, however, we must address one incorrect aspect of the trial court's order dismissing defendant's *pro se* petition. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) enables an Illinois criminal defendant to collaterally attack their conviction and sentence on constitutional grounds. Under the state and federal constitutions, a criminal defendant is entitled to the effective assistance of counsel (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8)) and a claim of ineffective-assistance of counsel may be pursued in a postconviction petition. See generally *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 19    We note that, citing *People v. Murphy*, 72 Ill. 2d 421 (1978), the trial court's order dismissed defendant's petition under a long-repudiated framework, using a much higher standard for gauging trial counsel's effectiveness, because defendant retained private counsel for trial. As defendant's reply brief notes, our supreme court abrogated this approach in *People v. Royse*, 99 Ill. 2d 163 (1983). See also *Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980) (holding that there is "no [constitutional] basis for drawing a distinction between retained and appointed counsel" as it "den[ies] equal justice to defendants who must choose their own lawyers"). Later, in *People v. Albanese*, 125 Ill. 2d 100, 105-07 (1988), the court adopted the now-familiar performance-prejudice test, as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which does *not* differentiate between public and private counsel. That said, we review the petition's dismissal *de novo* and may affirm on any basis in the record. *People v. Kimmons*, 2022 IL App (2d) 180589, ¶ 33. Thus, *if* we reach the petition's merits, the question for us is the correctness of that result, *i.e.*, the dismissal of the petition had the correct *Strickland* standard been applied, regardless of the rationale or precedent used by the trial court.

¶ 20    Next, the State is correct that defendant indeed forfeited his jury instruction claim. Defendant's *pro se* petition made no mention of appellate counsel's ineffectiveness; that argument was, for the first time, *added* by defendant's appellate counsel in his opening brief before this court. After the State raised this obvious forfeiture, defendant's appellate counsel filed a reply brief lamenting that defendant's petition did not "fully" set forth a claim of ineffective-assistance of direct-appeal counsel, but that the petition was nevertheless sufficient. We disagree. It is axiomatic that we cannot review the petition's dismissal based on claims that were *never* presented to the trial court. *People v. Blair*, 215 Ill. 2d 427, 442 (2005); *People v. Mars*, 2012 IL App (2d) 110695, ¶¶ 31-33. Accordingly, we would be within our rights to find defendant's claim forfeited and to

affirm on that basis alone. Nevertheless, because the matter is straightforward, we elect to relax the forfeiture rule and address defendant's claim on the merits.

¶ 21    As noted, claims of ineffective assistance are analyzed by using the two-prong test established in *Strickland*, 466 U.S. at 687. To prevail, a defendant must show that counsel's performance was deficient, or professionally unreasonable, and that the deficient performance was prejudicial, *i.e.*, that there is a reasonable probability that, but for counsel's action or inaction, defendant would have been acquitted. *Id.* at 689-94. The failure to establish either deficient performance or prejudice precludes a finding of ineffective assistance. *Id.*; see also *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) ("the Constitution entitles a criminal defendant to a fair trial, not a perfect one"). We determine that defendant has not established either deficient performance or prejudice.

¶ 22    With respect to the accomplice-witness instruction, this court recently addressed this precise issue in *People v. Quezada*, 2022 IL App (2d) 200195, *app. granted*, No. 128805 (Nov. 30, 2022)—a case which defendant's counsel here neither cited nor distinguished. Although our supreme court granted review in that case, our disposition set out a comprehensive statement on the law surrounding this issue, and it is that underlying body of law that controls our decision today.

¶ 23    The accomplice-witness instruction provides:

> "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." IPI Criminal No. 3.17.

As we said in *Quezada*, "The test for determining whether a witness is an accomplice, such that a defendant is entitled to have IPI Criminal No. 3.17 given to the jury, is " 'whether there is probable cause to believe that [the witness] was guilty either as a principal, or on the theory of accountability.' " *Quezada*, 2022 IL App (2d) 200195, ¶ 43 (quoting *People v. Cobb*, 97 Ill. 2d 465, 476 (1983) (quoting *People v. Robinson*, 59 Ill. 2d 184, 191 (1974))). In other words, " '[t]he instruction should be given if the totality of the evidence and the reasonable inferences derived from the evidence establish probable cause to believe that the witness participated in the crime, as either a principal or an accomplice.' " *Id.* (quoting *People v. Hunt*, 2016 IL App (2d) 140786, ¶ 52). Accordingly, "the evidence must show that there is probable cause to believe that the witness was not merely present " 'and failed to disapprove of the crime, but that he participated in the planning or commission.' " *Id.* (quoting *People v. Kirchner*, 194 Ill. 2d 502, 541 (2000) (quoting *People v. Henderson*, 142 Ill. 2d 258, 315 (1990)). Put differently, to have been an accomplice to Clark's murder, defendant must be able to point to evidence showing that Motsinger participated "knowingly, voluntarily[,] and with common interest" in Clark's shooting. See *People v. Wheeler*, 401 Ill. App. 3d 304, 313 (2010).

¶ 24    As in *Quezada*, here, there was no probable cause to believe that Motsinger was an accomplice to Clark's murder. Attached to defendant's petition was a police report, indicating that one officer was initially suspicious of Motsinger's involvement based on his series of stories about the shooting. But that report was excluded from defendant's trial and played no role in his conviction. The evidence that was admitted, however, showed that Motsinger was, at most, facilitating a cocaine transaction at defendant's request, was aware that defendant was in possession of a firearm and implored defendant not to use it, and was present when defendant shot Clark, who at the time was Motsinger's *de facto* employer. Throughout his testimony, Motsinger

consistently denied any involvement in the planning or execution of Clark's death, and no contrary evidence was ever introduced. There was no evidence whatsoever that Motsinger shared defendant's intent to shoot Clark or had any sort of common design with defendant to kill Clark. See generally *People v. Fernandez*, 2014 IL 115527, ¶ 13. Motsinger knew defendant since childhood, and never previously knew defendant to present a threat of mortal violence. In fact, defendant's own testimony was that he shot Clark in "self-defense," and not as part of some sort of plan with Motsinger's participation or even his acquiescence. As the State crystallized perfectly at oral argument, defendant's trial defense was *completely* incompatible with his present argument, as one cannot lawfully "plan" on committing an act of self-defense in advance, let alone with an "accomplice." As our colleagues in the First District have noted, even where an "accountable defendant promotes or facilitates a crime by another[,]" and harbors the erroneous "belief that self-defense is necessary[,]" he or she "is [actually] not culpable at all ***." *People v. Jones*, 2016 IL App (1st) 141008, ¶ 34. It is the defendant, as the principal, who is liable for his or her use of force.

¶ 25 In addition, at oral argument, defendant's counsel asserted for the first time that our supreme court's decision in *People v. Fane*, 2021 IL 126715, dictated that IPI Criminal No. 3.17 should have been requested during defendant's trial. Counsel conceded that she did not cite *Fane* in her briefs, but nevertheless, urged us to consider it. Having done so, we are not persuaded, and have rejected this argument before. In *Fane*, "our supreme court discussed when the instruction should be given but did so in holding that the trial court did not err in *giving* the instruction." (Emphasis in original.) *Quezada*, 2022 IL App (2d) 200195, ¶ 47. To say that a trial court did not err in issuing the instruction in a different case does not mean that trial counsel was unreasonable for declining to request an unwarranted instruction in *this* case.

¶ 26    We have carefully examined the record and agree with the State that there was no evidence that would warrant treating Motsinger as defendant's accomplice. Again, at most, Motsinger arranged the cocaine transaction for which he was merely present when defendant shot Clark, which was not sufficient evidence to merit instructing the jury with IPI Criminal No. 3.17.

¶ 27    Accordingly, we determine that it was not deficient performance for trial counsel not to request the accomplice-witness instruction, and by extension appellate counsel's performance was not deficient for failing to raise that issue on direct appeal. Moreover, *had* the instruction been given, there is no reasonable probability that defendant would have been acquitted. As in *Quezada*, the jury was instructed generally on the believability of witnesses, and defendant's trial counsel extensively argued Motsinger's credibility before the jury. The jury was thus faced with a binary choice, between whether to accept Motsinger's testimony or to reject it. We cannot say that the jury's decision to accept his testimony was unreasonable—particularly given the evidence that Clark had been in retreat and that defendant fired at Clark through the apartment door when he posed no threat—or that instructing the jury with IPI Criminal No. 3.17 would have altered that verdict.

¶ 28                                    III. CONCLUSION

¶ 29    In sum, we affirm the judgment of the Circuit Court of De Kalb County, which summarily dismissed defendant's *pro se* petition.

¶ 30    Affirmed.